THE SECOND NATIONAL BANK OF PHILADELPHIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76825. Promulgated December 19, 1935.

*R. Lester Moore, Esq.,* and *J. W. Rhine, Esq.,* for the petitioner.
*Eugene G. Smith, Esq.,* for the respondent.

OPINION.

STERNHAGEN: The petitioner, by resolution of its board of directors of March 18, 1931, authorized its officers to "charge $10,000 of the depreciation in the bond account", and in the journal of March 18, 1931, is an entry, "*Bonds & Securities, Reduction in book value of securities by order of Board 3/18/31 $10,000*", and in the ledger account, "Bonds & Securities", are the following credit entries of March 18, 1931:

|  | Credit |
|---|---|
| Erie R. R. Refund. & Improv. 5's, 5/1/67 | 2,000 |
| Florida East Coast Ry. First & Refund. Mtge. 5's, 9/1/74 | 3,000 |
| Lehigh Valley Transit Co. Refund. & Improv. 5's 6/1/60 | 2,000 |
| R. Hoe & Co. Inc. First Mtge. 6½'s, 10/1/34 | 1,000 |
| Seaboard All-Florida Ry. First Mtge. 6's, 8/1/35 | 1,000 |
| Wisconsin Central Ry. First Gen'l. Mtge. 4's, 7/1/49 | 1,000 |

By resolution of the board of directors of September 9, 1931, "the officers were authorized to reduce the book value of bonds and securities $40,000", a general journal entry to that effect was made, and the following credit entry was made in the ledger account. "Bonds & Securities":

|  | Credit |
|---|---|
| Florida East Coast Ry. 5's, 1974 | 5,000 |
| Midland Valley R. R. 5's, 1943 | 1,000 |
| Minneapolis, St. P. & S. S. M. Ry. 5's, 1938 | 1,000 |
| Wisconsin Cent. Ry. 4's, 1949 | 1,000 |
| Missouri Pac. R. R. 5's, 1977 | 1,000 |
| Buffalo, Roch. & Pittsb. Ry. 4½'s, 1957 | 1,000 |
| Illinois Cent. R. R. & Chgo. St. L. & N. O. R. R. 4½'s, 1963 | 1,000 |
| Erie R. R. 5's, 1967 | 1,000 |
| Wisconsin Cent. Ry. 4's, 1936 | 1,000 |
| Erie R. R. 5's, 1967 | 1,000 |
| St. Louis Sthwstn. Ry. 5's, 1952 | 1,000 |
| St. Louis-San Fran. Ry. 4½'s, 1978 | 2,000 |
| Kansas, Okla. & Gulf Ry. 5's, 1978 | 1,000 |
| Lehigh Valley Transit 5's, 1960 | 1,000 |
| Associated Gas & Elec. Co. 5's, 1968 | 1,000 |
| Phila. Rapid Transit 6's, 1962 | 2,000 |
| Scranton Ry. 5's, 1932 | 8,950 |
| Seaboard-All-Florida Ry. 6's, 1935 | 8,000 |
| Hidalgo County, Tex. 7's, 1940 | 1,050 |
| Eastern Michigan Rys. 6's, 1958 | 8,000 |

Upon its income tax return for 1931, among the deductions for bad debts, aggregating $122,436.68, is the following:

Amounts charged off on defaulted bonds which were considered partially worthless. The charge offs do not write off the books, entirely, the bonds listed.

| | | |
|---|---|---:|
| $15M | Florida East Coast Ry. 5–74 | $8,000 |
| $10M | Seaboard All Fla. Ry. 6–35 | 9,000 |
| $10M | Hidalgo County, Texas 7–40 | 1,050 |
| $8,200 | Eastern Mich. Rys. 6–1958 | 8,000 |
| | Total | 26,050 |

This deduction of $26,050 the Commissioner disallowed, with the following statement:

This deduction comprising the write-down of the following bonds in the amounts listed * * * has been disallowed under the provisions of article 191 of Regulations 74 and Office Decision (I. T.) 2612 published in Cumulative Bulletin XI–1, page 30, of the Internal Revenue Bulletin Service.

The bank, in its original petition, assailed the disallowance, and in an amended petition now claims to be entitled to a deduction of the entire $50,000 charge-off, relying largely upon the force of a bank examiner's direction. The Commissioner admits that the $50,000 was charged off, but traverses the averment that the debts represented by the bonds were ascertained to be worthless or that they were recoverable only in part. The controversy is entirely controlled by section 23 (j), Revenue Act of 1928.[1]

The evidence shows that the charge-off was made at the direction of a national bank examiner pursuant to his examinations and reports made in March and August 1931. As to the specific items listed, the evidence shows that the four which make up the $26,050 deducted on the return were all bonds which in 1931 were in default as to interest, and the debtor was, as to each, in receivership. In these circumstances, the national bank examiner, finding also that the bonds were quoted on the market at a small value, directed that they be written down, and in compliance with his direction the charge-off was made. The Government offered no countervailing evidence. We think this is sufficient to establish that the debts were, at least to the extent of the charge-off, beyond recovery, and that it requires the finding of fact which has been made. It follows, as a matter of law, that the deduction taken on the return was valid and

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * *

(j) *Bad debts.*—Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

that the Commissioner erred in disallowing it. Since the entire deficiency determined by the Commissioner is the result of this disallowance, it must be set aside and a judgment of no deficiency entered.

As to the remaining $23,950, the evidence does not establish that in 1931 the debts represented by the bonds above listed were either worthless or recoverable only in part. As to none of these bonds was there in 1931 evidence of a default or receivership, or, so far as this record shows, any reason to believe that they would not at maturity be paid in their entirety. Some of them became in default in 1932. As to all of them, the bank examiner in 1931 determined from his investigation that the market value was substantially lower than the value at which they were carried on the books. Thereupon he computed the aggregate diminution in value and, in accordance with a general policy of the Comptroller of the Currency, directed the bank to charge off an amount representing 25 percent of the drop in market value and to apply this charge-off against those bonds which had fallen in value to the greatest extent. In compliance with these two directions of March and August, the bank made the entries of $10,000 in March and $40,000 in September, these being round figures which approximated the more exact figures found in the bank examiner's reports. From this evidence we have been unable to find as a fact that any of the bonds, other than the four groups involved in the original deduction, were either worthless or recoverable only in part, and we have therefore omitted such a finding. Without it there is no support for the the deduction and hence no foundation for the judgment of overpayment which the petitioner seeks by its amended petition.

The petitioner argues that as a matter of law it is entitled to this additional deduction because the charge-off was required by the national bank examiner, despite the judgment of its own officers that the amount should, instead of being finally charged off, be set up in a reserve in view of the possibility of ultimate recovery, which the president thought was not unlikely. In other words, the petitioner argues that the mere official direction of a bank examiner is *per se* conclusive of the taxpayer's right to deduct the amount thus charged off. In this the petitioner is supported by *Citizens National Bank of Orange* v. *Commissioner*, 74 Fed. (2d) 604, in which the court said:

It is immaterial as to what reason the bank examiner gave for ordering the charge off. His determination that the bonds were worthless in part was sufficient. The bank was under the necessity of complying with the instructions given, and it seems only reasonable that the bank should be allowed, in its return for the purposes of taxation, a deduction, corresponding in amount to the charge off made under compulsion.

In *Lebanon National Bank* v. *Commissioner*, 76 Fed. (2d) 792, this appears:

> * * * when the department which had supervisory control required the bank to charge off the bonds entirely, then the bonds were officially declared worthless and should "for income tax purposes, be considered *prima facie* worthless." However, this *prima facie* worthlessness might be overcome if the bonds were "recoverable only in part," and that they were recoverable in part is shown by the fact that their recoverable value by sale at that time was $1,400. We think these figures and facts officially fixed the loss the bank was entitled to deduct in that year as $8,700. the difference between the original cost of $10,100 and recoverable value of $1,400.

These decisions, if given the force and scope which the petitioner claims for them, would have the effect of overthrowing a consistent line of decisions of the Board,[2] in which a bank examiner's direction to charge off has been held to be not controlling, but is to be weighed with all the other evidence. None of these decisions of the Board, listed in the margin, was appealed upon this point, and they would provide controlling precedents for the present proceeding unless they are now to be regarded as overthrown. The question involves an important principle of administrative law, and justifies a more thorough exposition than appears in any of the Board decisions.

A national bank examiner's direction to charge off is made for the supervisory or administrative purposes of the Comptroller of the Currency. The determination of the Commissioner of Internal Revenue is made for administrative purposes in the collection of the revenue. The two stand on a footing of independence and equality, and have disparate functions. But when the determinations of both appear in a proceeding before the Board, the Board has no freedom of choice between them—the determination of the Commissioner of Internal Revenue must, as a matter of law, be regarded as prima facie correct. *Burnet* v. *Houston*, 283 U. S. 223; *Wickwire* v. *Reinecke*, 275 U. S. 101; *Stiles* v. *Commissioner*, 69 Fed. (2d) 951; *Williams* v. *Commissioner*, 44 Fed. (2d) 467; *Green's Advertising Agency* v. *Blair*, 31 Fed. (2d) 96; *Bishoff* v. *Commissioner*, 27 Fed. (2d) 91; *Brown* v. *Commissioner*, 22 Fed. (2d) 797; *Avery* v. *Commissioner*, 22 Fed. (2d) 6. In addition to that general presumption of correctness, there is an especially strong presumption in respect to debts recoverable only in part, because the statute conditions such a deduction only upon the permissible allowance by the Commissioner when he, the Commissioner, is "satisfied that a debt is recoverable only in part." This statutory provision prohibits the view

---

[2] *Farmers & Traders Bank*, 4 B. T. A. 753; *Continental Trust Co. et al.*, 7 B. T. A. 539, 554; *Prescott State Bank*, 11 B. T. A. 147; *Guaranty State Bank of Greenville, Texas*, 12 B. T. A., 543; *West Lafayette Bank*, 12 B. T. A. 1356; *First National Bank, Parkers Landing, Pa.*, 12 B. T. A. 1387; *American National Bank of St. Paul*, 14 B. T. A. 476; *South Hills Trust Co.*, 19 B. T. A. 674; *First National Bank of Huntingdon, Pa.*, 23 B. T. A. 7; *Crocker First National Bank of San Francisco*, 26 B. T. A. 1078; *Chemical National Bank of New York*, 30 B. T. A. 178.

that the determination of a bank examiner is controlling, and where the two determinations conflict in a tax proceeding, the Commissioner's must stand until it is otherwise proven to be erroneous. In a case, not hard to imagine, where the taxpayer bank seeks such a deduction in a year different from that used by the bank examiner, the bank too would be entitled to prove facts in refutation of the bank examiner's determination.

Article 191 of Regulations 74 is to the effect that a debt which a bank examiner has ordered partially charged off shall be presumed to be recoverable only in part in the absence of affirmative evidence establishing the contrary. Such a regulation, however effectively it may bind the Bureau of Internal Revenue, can not prescribe rules of evidence in proceedings before the Board. By statute such proceedings are conducted in accordance with rules of evidence applicable in courts of equity, and rules of practice and procedure prescribed by the Board. Manifestly they are not subject to the regulations of either of the parties to the proceeding; and the Commissioner is always a party. To this general proposition the Board has long and consistently adhered, *Community Water Service Co.*, 32 B. T. A. 164; *Cape Henry Syndicate*, 30 B. T. A. 794, 797; *Grace Scripps Clark*, 1 B. T. A. 491.

But giving full respect to the Commissioner's regulation upon the assumption that it was not aimed at controversies with taxpayers after they reach the Board, we should, in a particular case where the Commissioner has not acted in accordance with the bank examiner's direction, suppose, not that the Commissioner has violated his own regulation, but rather that, conscious of his regulation, he has found reason to disallow the deduction and to put the taxpayer to his proof before the Board. Such proof may not be confined to the examiner's determination which the Commissioner has rejected, but must be direct evidence of the fact of ascertained worthlessness or the extent of nonrecoverability.

Frequently the Commissioner of Internal Revenue has had to pass upon questions which have been the subject of determination by another governmental agency. Such determinations made by the Interstate Commerce Commission, *Kansas City Southern Ry. Co.* v. *Commissioner*, 52 Fed. (2d) 372; certiorari denied, 284 U. S. 676; by the Federal Trade Commission, *Fraser Brick Co.*, 10 B. T. A. 1252; by a surrogate's court, *Edgar M. Carnrick*, 21 B. T. A. 12; by local tax appraisers, *Bessemer Investment Co.* v. *Commissioner*, 31 Fed. (2d) 248; *Barbara Konold*, 9 B. T. A. 1194; *Helen Barclay, Executrix*, 4 B. T. A. 1139; by a state banking commissioner, *Guaranty State Bank of Greenville, Texas*, 12 B. T. A. 543; and by a clearing house examiner, *Broadway Savings Trust Co.* v. *United States*, 66 Ct. Cls. 429, have not been treated as binding on the Commissioner. The

Board expressed this view in *Kansas City Southern Railway Co.*, 22 B. T. A. 949:

\* \* \* The Commissioner of Internal Revenue is charged with the single duty of determining and collecting taxes on annual income. \* \* \* It is quite unlikely that the Interstate Commerce Commission would take judicial notice of any finding of the Commissioner or of this Board as to the invested capital of any railroad as the basis for compensatory service rates. On the other hand, there is no reason why the taxing authorities should be bound in income-tax determinations by any Interstate Commerce regulations or rules relating to the capital of carriers. Each, in its own domain, must discharge its duties as presented by the statutes.

and was supported by the Circuit Court of Appeals for the Eighth Circuit in *Kansas City Southern Ry. Co.* v. *Commissioner, supra.*

In *Citizens National Bank of Orange* v. *Commissioner, supra,* the Circuit Court of Appeals for the Fourth Circuit stressed the principle that consistency in governmental determinations is highly desirable and should be furthered wherever the ends of justice permit. This can not be challenged. But to treat the finding of another agency as conclusive would in effect deny to the parties the right of any judicial review of the fact in controversy; for if the Board is required to make a finding in conformity with the prior determination of the bank examiner, such finding would be controlling upon the courts on review. *Phillips* v. *Commissioner,* 283 U. S. 589; *Helvering* v. *Rankin,* 295 U. S. 123. We may not impose upon the Commissioner of Internal Revenue the finding of an independent agency over which he has no control. As a principle of administrative law, we should hesitate to say that, as a matter of expediency, consistency of governmental determinations should be furthered by an unquestioning adoption of the conclusion reached by the first agency to act.

The bank examiner's finding may be based on ample evidence brought to his attention, and on his personal knowledge of circumstances and his competence to form an opinion that a specific portion of a debt is not recoverable; and these may warrant an acceptance of his finding. But they are not properly in evidence merely by proof of his direction to the bank. The Board would have the duty to consider and weigh his testimony as a witness, and is not bound by proof of his categorical direction. *American Trust Co.* v. *Commissioner,* 31 Fed. (2d) 47.

The petitioner, although urging that the direction of the bank examiner was in itself sufficient to establish its right to the deduction, did not rest on this alone, but called the bank examiner as a witness. The bank examiner testified as to the nature of his examination and the practice and policy of the Comptroller of the Currency in regard to such matters. From his testimony it appears that he regards his function as principally to appraise the loans,

real estate and other assets of the bank at a fair valuation and to see that the books show the bank's true financial condition in accordance with such fair valuation. His concern is to protect depositors and prospective shareholders. To arrive at what he regards as a fair valuation, he uses information from all available sources, more frequently that which is found in financial and statistical publications. Under the customary practice, a bank would be permitted on its books to restore a bond when its market value went up, as well as required to write it down when its market value diminished. The practice was to require a bank to charge off the total drop from book value to market value on all bonds in default, and to charge off approximately 25 percent of the drop in other securities not in default. " The 25 per cent was not taken off the list as a whole but applied to those particular bonds which were regarded as of the weakest character." "I went over the list in respect of depreciation. In some cases the depreciation was very slight; in other cases it was anywhere from 20 to 40 per cent; and the items I gave the bank covered those particular bonds which showed the greater depreciation. In my view they were the weaker bonds."

Thus it is demonstrated that the bank examiner's instructions are not related to the question raised by the revenue act as to whether the debts are worthless or recoverable only in part, and if so to what extent, but that they are concerned with the correct valuation of assets from time to time, a public purpose quite different from that in charge of the Commissioner of Internal Revenue. While it is perhaps not fair to say that the bank examiner's directions follow fluctuations in the market, as if his instructions changed from day to day, it is nevertheless true that when given at semiannual intervals they are primarily concerned with market values and not with the determination of the extent to which the debt will ultimately be paid. We should say, therefore, that the determination of the Comptroller of the Currency made for his administrative purposes is no more significant in the determination to be made by the Commissioner of Internal Revenue than are the official accounting requirements imposed upon carriers by the Interstate Commerce Commission. As to this the Supreme Court has said:

* * * the rules of accounting enforced upon a carrier by the Interstate Commerce Commission are not binding upon the Commissioner; nor may he resort to the rules of that body, made for other purposes, for the determination of tax liability under the Revenue Acts. [*Old Colony R. R. Co.* v. *Commissioner*, 284 U. S. 552.]

See also *Kansas City Southern Ry. Co.* v. *Commissioner, supra; Union Pacific R. R. Co.*, 26 B. T. A. 1126, 1143 (reversed on other point, 69 Fed. (2d) 67).

We find ourselves led by these several considerations to the proposition of law that the direction of a national bank examiner requiring a bank to write down the value of bonds is not of itself enough to establish that the amount of the write-down is deductible under the revenue act. Such a direction of a bank examiner may be received in evidence and is to be weighed in accordance with the data upon which the direction is based. In this proceeding such data shows that the write-off was, to the extent of $26,050, deductible in accordance with the revenue act, and to the extent of $23,950 not deductible. While, therefore, the petitioner is entitled to a judgment of no deficiency, it may not have a judgment of overpayment.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

LEECH concurs in the result.