The First National Bank of Fort Worth v. Commissioner.
First Nat'l Bank of Fort Worth v. Comm'r
Docket No. 104414. United States Tax Court
1943 Tax Ct. Memo LEXIS 471; 1 T.C.M. (CCH) 561; T.C.M. (RIA) 43073; February 4, 1943
*471 Y. D. Harrison, Jr., C.P.A., Fort Worth, Tex., and Warren Scarborough, Esq., for the petitioner. D. D. Smith, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined deficiencies for the year 1938 in petitioner's income and excess profits tax, respectively, in the amounts of $23,465.16 and $1,810.30. An agreement has been reached by the parties upon several issues originally raised by the pleadings. Four issues remain to be decided, as follows: 1. Must petitioner include in income the amounts of certain items previously charged off as bad debts and recovered during the taxable year? 2. Is petitioner entitled to a bad debt deduction in the amount of $83,219.11? 3. Did petitioner realize income in the amount of $289.50 by reason of reimbursement of premiums petitioner had paid on insurance on the life of one of its borrowers? 4. Is petitioner entitled to deduct as a loss the sum of $2,590 on the sale of property known as the Slay property? Findings of Fact Petitioner is a national bank, with its principal office at Fort Worth, Texas. Petitioner filed its income and excess profits tax return for 1938 with the collector of internal *472 revenue for the second district of Texas. By a check, dated July 8, 1940, petitioner made payment with respect to 1938 income tax in the amount of $769.43 of which $714.33 was in payment of tax and $55.10 was in payment of interest. Issue 1. During the year 1938, petitioner recovered $72,860.41 upon loans which had been previously charged off and deducted as bad debts in the years 1931, 1932, and 1933. During the year 1931, petitioner charged off on its books $353,058.98, and deducted that amount as a bad debt deduction on its income tax return for the year 1931. On its return for the year 1931, petitioner showed a loss of $198,821.63. No adjustment to that amount was made by the respondent. During the taxable year 1938, petitioner recovered $12,492.46 of the amount charged off and deducted in 1931, and that amount was included by petitioner in Schedule Q attached to the 1938 return, as a non-taxable recovery. Prior to 1938, petitioner had recovered $43,754.03 of the amount charged off and deducted in 1931. The accounts upon which recoveries were made in 1938, which were charged off in 1931, and the amounts of recoveries on those accounts after the date of charge off and prior *473 to 1938, are shown in the following table: Recoveries in 1938
Amount Charged
(which Amounts
Off with Respect
Recoveries After
Are Included in
to Debts on
Date of Charge-
Schedule Q
which Recoveries
Off and Prior
Attached to 1938
Name of Debtor
Were Made
to 1938
Return)
C. A. Nail
$ 200.00
$ 105.90
$ 94.10
Texas Marble & Granite
100.00
None
1.00
Hazel Johnston
100.00
25.00
3.50
T. W. Smith
20.00
8.00
3.50
Mary E. Yarbrough
620.10
25.00
3.00
H. M. Craig
7,000.00
None
5,087.78
W. J. Weaver
5,077.96
2,575.96
470.00
V. K. Wedgeworth
110.00
10.00
6.30
J. C. Dibrell
4,000.00
None
2,940.35
E. W. Clark
5,700.00
None
3,882.93
Total
$22,928.06
$2,749.86
$12,492.46
During the year 1932, petitioner charged off on its books $151,184.66, and deducted that amount as a bad debt deduction on its income tax return for the year 1932. The return for the year 1932 showed a loss of $94,434.01, before carryover of the loss for 1931. No adjustment to that amount was made by the respondent. During the taxable year 1938, petitioner recovered $3,232.81 of the amount charged off and deducted in 1932. Prior to 1938 petitioner had recovered *474 $36,443.67 of the amount charged off and deducted in 1932. The accounts upon which recoveries were made in 1938, which were charged off in 1932, and the amounts of the recoveries on those accounts after the date of charge-off and prior to 1938, are shown in the following table: Recoveries in 1938
Amount Charged
(Which Amounts
Off with Respect
Recoveries After
Are Included in
to Debts on
Date of Charge-
Schedule Q
which Recoveries
Offs and Prior
Attachment to 1938
Name of Debtor
Were Made
to 1938
Return)
Tom B. Bond
$1,800.00
$ 250.00
$ 275.00
T. E. Ballard
1,000.00
525.00
125.00
S. Moats
99.33
85.00
3.64
F. J. Thorn
600.00
200.00
160.00
H. M. Craig
2,500.00
None
2,500.00
L. G. Bradstreet
2,500.00
None
65.78
B. C. McMordie
656.91
32.07
99.89
B. O. McConnell
150.00
146.50
3.50
Total
$9,306.24
$1,238.57
$3,232.81
During the taxable year 1933, petitioner charged off on its books $811,059.64, and deducted that amount as a bad debt deduction on its income tax return for the year 1933. The return for the year 1933 showed a loss of $629,521.47. No adjustment to that amount was made by the respondent. During the taxable *475 year 1938, petitioner recovered $37,691.99 of the amount which was charged off and deducted in 1933. Prior to 1938, petitioner had recovered $196,611.40 of the amount charged off and deducted in 1933. The accounts upon which the recoveries were made in 1938, which were charged off and deducted in 1933, and the amounts of recoveries on those accounts after the date of charge-off and prior to 1938, are shown in the following table: Amount Charged
Recoveries in 1938
Off with Respect
Recoveries After
(which Are In-
to Debts on
Date of Charge-
cluded in Schedule
which Recoveries
Off and Prior
Q Attached to 1938
Name of Debtor
Were Made
to 1938
Return)
Walter L. Cox
$ 1,558.42
$ 1,400.00
$ 52.10
Paul. A. Langford
3,300.00
805.78
300.00
Henry Lowe Cigar Co
9,882.34
512.68
20.00
Methodist Hospital
10,666.00
None
19.42
C. B. Norman, Trustee
2,000.00
450.00
250.00
Earl H. North
55,800.00
None
1,000.00
J. B. Sneed
9,513.70
109.45
800.00
O. C. Morrow
75.00
12.13
10.00
Paul B. Leeper Lumber Co
130.00
65.00
65.00
Charles Addington, Jr
25.00
16.00
9.00
Willabeth Floyd
40.00
None
2.77
Ned Henry
400.00
None
4.00
J. L. Taylor
6,500.00
4,640.97
1,360.36
Tonsor Shop
340.00
87.62
80.00
Yebb Walker
31,500.00
170.74
23,424.85
Frank W. O'Riley
20.00
5.12
.85
Mrs. C. H. Welsch
62.00
50.00
12.00
Jerry Dollins
25.00
22.00
3.00
J. R. Elliott
1,000.00
300.00
700.00
J. P. Germany
216.00
68.65
10.00
D. L. Harrell
200.00
200.00
5.00
A. Horton
1,150.00
535.72
90.00
Elizabeth King
725.00
130.00
20.00
L. R. Scarborough
975.00
385.00
120.00
J. Q. Allen
15,000.00
None
2,080.08
Mrs. C. L. Fenner
6,000.00
5,000.00
1,000.00
So. Western Baptist Sem
45,000.00
5,732.43
6,253.56
Total
$202,103.46
$20,780.29
$37,691.99
*476 The entire amount of bad debts previously charged off and deducted by petitioner, which were recovered during 1938, and the amount of recoveries prior to 1938, are shown in the following table: Amounts Recovered
Amounts Recovered
Amounts Recovered
on 1931 Charge-Off
on 1932 Charge-Off
on 1933 Charge-Off
and Deduction in
and Deduction in
and Deduction in
Amount of
Amount of
Amount of
Year of Recovery
$353,058.98
$151,184.66
$811,059.64
1931
$ 553.59
None
None
1932
4,499.50
$ 3,702.28
None
1933
9,521.64
8,964.52
$ 65,005.84
1934
4,291.66
780.69
19,736.78
1935
4,283.51
2,089.71
23,209.42
1936
9,389.01
17,630.18
50,215.87
1937
11,215.12
3,276.39
38,443.49
Total Recoveries Prior to 1938
$43,754.03
$36,443.67
$196,611.40
Petitioner's return for 1934 showed a profit of $76,694.73, which was adjusted by the respondent to $94,059.40, on which petitioner paid a tax of $14,087.67. Petitioner's return for 1935 showed a profit of $82,031.06, which was adjusted by the respondent to $85,346.21, on which petitioner paid a tax of $11,735.10. Petitioner's return for 1936 showed a profit of $198,782.93, which was adjusted by the respondent *477 to $149,211.36, on which petitioner paid a tax of $22,381.70. Petitioner's return for 1937 showed a profit of $100,312.65, which was adjusted by the respondent to $125,302.73, on which petitioner paid a tax of $18,789.41. During 1938 petitioner also recovered $19,443.15 on the loans which were charged off on the books of petitioner during 1933, but for which charge-offs no deductions from income were taken on petitioner's income tax return for the year 1933. The detail relating to these recoveries is covered by petitioner's Exhibit 14, which is incorporated herein by reference. In its return for 1938 petitioner reported as non-taxable recoveries the following amounts: Recoveries charged off and
deducted in 1931
$12,492.46
Recoveries charged off and
deducted in 1932
3,232.81
Recoveries charged off and
deducted in 1933
37,691.99
Recoveries charged off in
1933, but not deducted
19,443.15
Total
$72,860.41 Respondent determined that the entire amount should be included in petitioner's gross income for 1938. Issue 2. On or about September 11, 1931, the First National Bank of El Paso, Texas, closed, and a receiver was appointed. During the first six months after the *478 El Paso bank closed, petitioner participated in attempts to reorganize the closed bank. Efforts to reorganize the bank were unsuccessful. On the date that the El Paso bank closed, petitioner had $176,786.10 on deposit. From December of 1931 to the end of 1933 petitioner made charge-offs on its books of various amounts of the account at the direction of a bank examiner, as follows: On December 16, 1931, $15,000 was charged off. On June 29, 1932, another $15,000 was charged off. On January 3, 1933, $58,550 was charged off. Also, petitioner charged off $6,000 on December 30, 1933, without direction from the bank examiner, but upon its own decision. Petitioner made some recoveries through liquidating dividends which were paid. On May 6, 1932, petitioner received $53,035.83. On February 4, 1934, petitioner received $29,464.35. A final liquidating dividend in the amount of $11,066.81 was paid on June 27, 1938. After that date no further recoveries were possible. The following schedule shows the balances of the account from 1931 to 1933: Nov. 19, 1931
Balance of account as carried on books
* $170,000.00
Dec. 16, 1931
Charged off under examiner's direction
- 15,000.00
Balance
155,000.00
May. 1932
Transferred from account "due from banks"
+ 6,786.10
Balance
161,786.10
May 6, 1932
Dividend received
- 53,035.83
Balance
108,750.27
June 29, 1932
Charged off under examiner's direction
- 15,000.27
Balance
93,750.00
Jan. 3, 1933
Charged off under examiner's direction
-58,550.00
Balance
35,200.27
Dec. 30, 1933
Charged off
- 6,000.00
Balance
$ 29,200.27
*479 In December of 1932 the account of petitioner in the El Paso bank was examined by a national bank examiner and he valued the account at $35,200.27. His report directed that $58,550 should be charged off shortly after the first of the succeeding year. The aggregate of the recoveries by petitioner of the account with the El Paso bank was $93,566.99. The difference, $83,219.11 has never been recovered. Prior to 1933, $30,000 had been charged off as partially worthless. Subsequent events have shown that the bank examiner's estimate at the end of 1932 that an additional amount of $58,550 was not recoverable was sound and close to being accurate. The aggregate of the charge-offs made by petitioner in 1931, 1932, and 1933, is $94,550. The total charge-offs exceeded the unrecoverable portion of the debt, $83,219.11, by $11,330.89. Petitioner deducted *480 in its income tax returns for 1931 and 1932 the amounts of $15,000 respectively. However, in each year petitioner's return showed a net loss without taking into account the $15,000 deduction. Petitioner did not receive a tax benefit from these deductions aggregating $30,000. Petitioner did not deduct in its return for 1933 the charge-offs made in this account on its books in 1933 aggregating $64,550. Petitioner has not received any tax benefit for any of the charge-offs in this account aggregating $94,550. The recovery of $11,066.81, received in the taxable year 1938, was not income upon which petitioner is taxable. At the end of 1933, the balance of this account on petitioner's books was $29,200.27. When petitioner received the dividend of $29,464.35 on February 4, 1934, the balance was reduced to zero by the credit. The excess $264.08 was credited to "profit and loss." After February 4, 1934, the account was not carried on petitioner's general ledger. At that time the original amount of the account, less the dividends received was transferred to the securities ledger. No charge-offs in the account were made in the taxable year 1938. The unrecovered and unrecoverable balance of *481 the account was $83,219.11. Petitioner had taken deductions aggregating $30,000 in 1931 and 1932 for partial worthlessness of the debt and these deductions were allowed. Prior to 1938 petitioner had not taken a deduction in any return for the difference, $53,219.11. In its return for 1938, petitioner deducted $53,219.11 as bad debt deduction. Respondent disallowed the deduction. Petitioner ascertained the debt to be worthless to the extent of at least $53,219.11 in 1933 and made charge-offs of the account on its books in 1933 in amounts exceeding the above figure. Issue 3. At some time prior to April, 1936, the petitioner loaned money to Frank Lacy on his promissory note, and took as part security for that note a life insurance policy on the life of Frank Lacy. The debt was in excess of the face amount of the policy. On April 23, 1936, petitioner paid to the Southwestern Life Insurance Co. $144.75 as a premium on the policy of insurance on the life of Frank Lacy. On February 2, 1937, petitioner paid an additional premium of $144.75. These amounts were entered on the account of Frank Lacy and were not deducted from gross income in the year in which paid. Those items were reported *482 as non-deductible in petitioner's returns for 1936 and 1937, and no adjustment to that treatment of the items was made by respondent. On the death of Frank Lacy, in 1938, petitioner recovered $3,597.93, representing the face amount of the insurance policy less loans made by the insurance company. Of the amount recovered, $2,500 was applied on the loan, and that amount was included in petitioner's return among the recoveries of debts charged off in 1933, but not deducted on petitioner's income tax return for 1933. Of the amount received in 1938, $289.50 was applied to the premiums previously paid by petitioner on the life insurance policy. The amount was reported in schedule Q attached to the 1938 return as a non-taxable recovery. The balance of $808.43 was reported by petitioner in its 1938 return as taxable income. Respondent determined that the $289.50 applied to premiums paid by petitioner during 1936 and 1937 was taxable income in 1938. Issue 4. On October 28, 1927, petitioner loaned $5,000 to W. H. Slay on his promissory note, and took as security a deed of trust on the E. 1/2 of Lot 4, Block 10, Sandidge Addition, Fort Worth, Texas. The original note carried interest at *483 7 percent, and was to mature in 90 days. The note was twice extended. On April 16, 1928, the note was extended to October 16, 1928, and on October 14, 1928, a renewal note, payable in six months and carrying interest as 7 percent, was executed. In 1932, petitioner investigated and found that Slay was insolvent. At that time an agreement was reached with Slay whereby he was to deed the property to petitioner in cancellation of the debt. Petitioner found, however, that a number of judgments had been secured against Slay by other creditors, and that those judgments had become a lien upon the property. Thus in order for petitioner to obtain clear title to the property, it was necessary to go through the form of foreclosure and sale. Accordingly, petitioner instituted foreclosure proceedings, and on June 10, 1932, a decree of foreclosure was entered. The property was levied upon on July 10, 1932, and was sold at public sale on August 2, 1932. Petitioner was the only party bidding at the sale and obtained a sheriff's deed to the property which recited a consideration of $1,000. Following the foreclosure and sale, the property was appraised by petitioner's real estate department and entered *484 on petitioner's books at $5,000. The $5,000 debt of Slay was not deducted as a bad debt, but was charged to the real estate account. The property in question consisted of a lot 50 x 106, improved by a one-story brick building, approximately 50 x 70, and by another small brick building in the rear of the lot. The larger brick building was divided into two spaces, one space being about twice the size of the other. The property was in a good state of repair, and was rented to two tenants who paid $35 and $20 per month, respectively. The property continued to be so rented about one year. At that time the tenant in the larger part of the building moved out and a new tenant was secured at a rent of $25 per month. At the time the property was acquired, all of the property in the neighborhood was rented to substantial tenants. Subsequently, a bakery, which was the largest employer in the neighborhood, moved out and the surrounding property was no longer rented to substantial tenants. The fair market value of the property at the time it was acquired by petitioner was $5,000, which is the amount at which it was entered on petitioner's books. The value at which the property was carried on *485 petitioner's books was subsequently reduced, but such reductions were not deducted in any income tax return. Prior to 1938, petitioner charged off against the Slay account $3,850 on July 10, 1931, and $1,300 on August 4, 1932. These charge-off figures related to other indebtedness of Slay and not to the $5,000 note in question. In 1938 the property was sold by petitioner for $1,750. Between the date of acquiring the property and the date of sale, depreciation had been claimed and allowed with respect to the improvements on the property, in the amount of $660. Petitioner in his return claimed a loss with respect to the sale of the property of $2,590, being the difference between the basis of $4,340 ($5,000 less depreciation of $660) and $1,750. In the notice of deficiency, respondent determined that petitioner realized no gain or loss on the sale of the property. Opinion Issue 1. The first issue is whether or not petitioner must include in income amounts recovered during the taxable year on debts ascertained to be worthless and charged off during previous years, when petitioner had net loss. During each of the years 1931, 1932, and 1933, petitioner charged off and deducted *486 from income, debts which it ascertained to be worthless. In each of those years petitioner's return showed a net loss after taking the bad debt deductions. In 1933 petitioner also charged off a number of debts which it did not deduct in its in come tax return for that year. In 1938 petitioner recovered part of the debts previously charged off. Respondent determined that the amounts recovered were properly includable in petitioner's income for 1938. This Court has repeatedly held that amounts recovered on bad debts previously deducted need not be included in income if no tax benefit was derived from the earlier deduction. [1]
*487 However, this question is now controlled by section 116 of the Revenue Act of 1942, [2] which, for the purposes of the instant case, is effective as if this section was a part of the Revenue Act of 1938 on the date of its enactment. This section provides for the exclusion from gross income of amounts recovered on debts previously charged off and taken as deductions on returns for prior years to the extent that such amounts did not operate to reduce the income tax liability of the taxpayer for any prior year. This Court applied this section of factual circumstances similar to those in the instant case in First National Bank in St. Louis, 1 T.C. 370, and Bank of Newberry, 1 T.C. 374. It was held in these cases that as the prior deductions of debts did not result in a reduction of the taxpayer's income tax in such earlier years, the recoveries of such debts are to be excluded from gross income. Thus, it is clear in the instant case that unless petitioner has received a tax benefit from the deductions of debts in the prior years, the recoveries of such debts are to be excluded from petitioner's gross income. *488 In 1931 petitioner had a net loss of $198,821.63, after a deduction of $353,058.98 for bad debts. Prior to 1938 petitioner recovered $43,754.03, leaving a balance of $155,077.60 of the 1931 deduction, from which no tax benefit was received. During the taxable year petitioner recovered $12,492.46 of debts charged off and deducted in 1931. It is clear that petitioner received no tax benefit from the earlier deduction of that amount. It is held that the $12,492.46 recovered in 1938 is not includable in petitioner's income for 1938. In 1932 petitioner had a net loss of $94,434.01 before carry-over of the loss for the year 1931, and after deduction of $151,184.66 for bad debts. Prior to 1938, petitioner recovered $36,443.67, leaving a balance of $57,990.34 of its 1932 deduction from which no tax benefit was received. During the taxable year petitioner recovered $3,232.81 on debts charged off and deducted in 1932. It is clear that petitioner received no tax benefit from the earlier deduction of that amount. It is held that the amount of $3,232.81 is not includable in petitioner's income for 1938. In 1933 petitioner had a net loss of $629,521.47 after deduction of $811,059.64 for bad *489 debts. Prior to 1938, petitioner recovered $196,611.40, leaving a balance of $432,910.07 of the 1933 deduction from which no tax benefit was received. During the taxable year petitioner recovered $37,691.99 on debts charged off and deducted in 1933. It is clear that petitioner received no tax benefit from the earlier deduction of that amount. It is held that $37,691.99 is not includable in petitioner's income for 1938. During 1938, petitioner recovered $29,208.71 on accounts, against which there was a charge-off in 1933, which was not deducted from income. Of that amount, petitioner contends that $19,443.15 represents recovery of that portion of the accounts which was charged off in 1933, but never deducted from income. Respondent argues, however, that petitioner has failed to prove that the recovery was, in every instance, applicable to the portion of the debt charged off in 1933, but not deducted. With respect to $16,969.62 of the $29,208.71 recovered, the charge-offs in 1933 for which no deductions were taken were the only charge-offs on those accounts. The petitioner has sustained its burden of proof with respect to this amount. The recovery on those accounts was applicable to *490 the amount charged off in 1933, but not deducted. It is held that $16,969.62 is not includable in income for 1938. In the case of other accounts there were charge-offs other than those in 1933 for which no deduction was taken, aggregating $2,473.53. In arriving at $2,473.53 as the portion of recovery on those accounts, which was applicable to the 1933 charge-off which was not deducted, petitioner applied the "first in, first out" rule. That is, the recoveries during 1938 and prior years were applied first to the earliest charge-offs. For example, the case of the account of C. M. Armstrong, $500 was charged off, but not deducted in 1933, and an additional $406.41 was charged off and deducted in 1934, when petitioner had taxable income. A total of $279.85 was recovered prior to 1938, and that recovery was applied to the first charge-off, which was the 1933 charge-off of $500. At the beginning of 1938 a balance of $220.15 of the 1933 charge-off remained unrecovered. An additional $300 was recovered in 1938, and $220.15 of that amount was applied to the 1933 charge-off and returned as non-taxable. The balance of 1938 recovery was applied to the 1934 charge-off and deduction and was included *491 in taxable income. A similar method was used in allocating the 1938 and prior recoveries in the case of all of the other accounts, on which the 1933 charge-off, for which no deduction was taken, was the first charge-off on that account. In the case of H. M. Craig, however, the additional charge-offs were in 1931 and 1932. Petitioner first applied recoveries in 1938 and prior years to the 1931 and 1932 charge-offs, and then applied the balance of 1938 recovery to the 1933 charge-off and in that way determined that $306.51 was applicable to the amount charged off in 1933, but not deducted. Under the decided cases, petitioner is entitled to apply the amounts recovered, first against the previous charge-offs for which no tax benefit was received. Only after it has exhausted the prior charge-offs, which did not offset taxable income is petitioner required to include in income amounts recovered on bad debts. In Citizens State Bank, supra, in three of the years of charge-off involved, the taxpayer had taxable income prior to its taking the bad debt deductions. Thus a portion of the bad debt deductions was used to offset otherwise taxable income. Nevertheless, *492 it was held that the petitioner realized no taxable income upon recovery of amounts less than the loss, because the recoveries were applicable to the portion of the deduction which did not offset taxable income. Applying the principal of the Citizens State Bank case to the present case, petitioner is entitled to apply the 1938 recovery on the accounts in question, first to the charge-offs which did not result in a tax benefit, with respect to the $29,208.71 recovered on accounts on which charge-offs were made, but no deductions taken in 1933, petitioner is entitled to apply the recovery first to the part which was not deducted. In the case of the Craig account, it is immaterial whether the recoveries were applied first to the 1931 and 1932 charge-offs or to the 1933 charge-off which was not deducted, since in either case there was no tax benefit from the earlier deduction. Thus in the case of the Craig account a proper result was reached by applying the recovery first to the 1931 and 1932 deductions. Accordingly, it is apparent that even though petitioner's impression that the "first in, first out" rule should be applied was erroneous, the result reached was correct. When the *493 1938 recoveries on accounts on which there was a charge-off and no deduction in 1933 recoveries are applied, first to the charge-offs from which no tax benefit was received, we find that $19,443.15 of the $29,208.71 was applicable to the portion charged off in 1933, but not deducted. Accordingly, no part of the $19,443.15 is includable in petitioner's income for 1938. Issue 2. Under this issue there are two questions (a) whether or not the recovery of $11,066.81, the final liquidating dividend paid by the receiver of the First National Bank of El Paso, is taxable income; and (b) whether or not petitioner is entitled to a deduction in the taxable year 1938 for $83,219.11, or a lesser amount, for the partial worthlessness of the indebtedness of the El Paso bank. (a) It is held that the final liquidating dividend received in 1938 is not taxable income. Whether or not this recovery is to be credited to either charge-off of $13,000 deducted in the returns for 1931 and 1932, or to the charge-offs in 1933, which were not included in deductions taken on the return for that year, is not material, because petitioner has not received in any prior tax year any tax benefit for the charge-offs *494 on the books. Also, there is no element of an excess of recoveries over actual charge-offs, because petitioner is not making claim for any deductions for partial worthlessness in excess of actual non-recoveries. Petitioner is not taxable on the recovery received in 1938, never having received any tax benefit for any deduction on account of partial worthlessness of the account, under our decisions in Motor Products Corporation, 47 B.T.A. 983, and because of the retroactive provisions of section 116 of the Revenue Act of 1942, amending section 22 (b) of the Internal Revenue Code. See Bank of Newberry, supra. (b) In its return for 1938 petitioner took a deduction for partial worthlessness of the El Paso bank debt in the amount of $53,219.11, the net balance which is not recoverable after prior deductions for partial worthlessness taken in 1931 and 1932, and after all recoveries, including the final liquidating dividend received in 1938. Petitioner contends that the charge-off taken in 1933 in the larger amount of $58,550 suffices to meet the requirement of charge-off in the year of ascertainment of worthlessness under the *495 provisions of section 19.23(k)-1(c) of Regulations 103, as amended by T.D. 4978, Cum. Bul. 1940-2 p. 75. [3]
*496 In this respect petitioner contends that the charge-off in 1933 was involuntary because it was made only at the direction of a national bank examiner. Petitioner has never taken a deduction for worthlessness of the debt in the amount taken on the return for 1938, and has not received a tax benefit for the entire amount of the worthlessness in the amount of $83,219.11, and petitioner seeks to obtain a tax benefit in 1938. Under the pleadings, petitioner now claims that it is entitled to a deduction in 1938 for the entire net amount of the unrecoverable portion of the debt, $83,219.11. With respect to petitioner's claim for deduction in 1938 for the total of the two $15,000 deductions which were taken, $15,000 each year, in the returns for 1931 and 1932, petitioner is not entitled to the deduction. It is immaterial that petitioner did not receive a tax benefit in each year of the prior deductions. This claim is controlled by our holdings in Motor Products Corporation, supra, p. 1001 and 1002, and Bank of Newberry, supra.There is no evidence to show that the respective charge-offs and deductions of $15,000 each in 1931 *497 and 1932 were erroneous. Rather, the record shows that petitioner ascertained that the El Paso bank debt was partially worthless in each of the prior years to the extent of the $15,000 charged off and deducted in each year. Petitioner was allowed the deductions must stand as having been taken properly in the earlier years. The socalled tax benefit rule has never been extended to allowing two deductions, in different years, for the same item. The remaining question is whether petitioner is entitled to a deduction in the taxable year in the amount of $53,219.11 for a partially worthless debt. Under the statute, section 23 (k) (1) of the Revenue Act of 1938, a deduction for a partially worthless debt is allowable only upon three conditions, ascertainment of worthlessness in the year in which the deduction is claimed, and charge-off within the same year, and indication from the Commissioner that he is satisfied that the debt is recoverable only in part. None of these requirements has been met. Further, the respondent has disallowed the deduction and the burden is upon petitioner to overcome the prima facie correctness of that determination. Petitioner has failed to overcome that *498 presumption. It is held that petitioner is not entitled to the deduction for failure of proof. Petitioner relies strongly upon the amended regulation which has been set forth above in the margin. In Second National Bank of Philadelphia, 33 B.T.A. 750 we stated at length the reasons why proof must be offered independently of the mere evidence of a bank examiner's appraisal of value, to show worthlessness or partial worthlessness of property at any particular time. While petitioner is contending here that the bank examiner's appraisal of value and partial worthlessness of the debt in question in 1933 is not controlling, the reverse of the contention in the cited case, petitioner did not offer evidence relating to the financial condition of the El Paso bank in 1933 and subsequent years, including 1938, to establish the fact that the debt was not worthless to the extent of approximately $53,000 in 1933, and positively, that the debt became worthless to that extent in 1938. Other evidence is required with which the direction of a bank examiner and the data upon which his conclusions are based are to be weighed. The record here, as far as it goes, tends *499 to support the appraisal made by the bank examiner at the end of 1932, upon which he directed a charge-off of $58,550 at the beginning of 1933. At the end of 1932 he appraised the debt to be worth $35,200 and his direction to charge off $58,550 as uncollectible or very doubtful was for the purpose of reducing the value of the debt, as an asset, to $35,200. Subsequent events have shown the soundness of that appraisal. In February of 1934 petitioner recovered $29,464.35 and in June of 1938 petitioner recovered $11,066.81. The total of these two recoveries is $40,531.16. The bank examiner in 1933 undervalued the recoverable amount of the debt by about $5,300. That does not support petitioner's contention that it was not until 1938 that the unrecoverable portion of the account was ascertained to be around $53,000. Rather, the debt was worthless to the extent of around $53,200 at the end of 1933 or the beginning of 1933, as subsequent events now show clearly. One of petitioner's witnesses testified that petitioner would not have charged off $58,550 in January of 1933, but for the fact that the bank examiner gave that order. However, such testimony is in conflict with the fact that petitioner *500 voluntarily charged off an additional $6,000 at the end of 1933 voluntarily and without order from the bank examiner. That action on the part of petitioner is strong evidence that at the end of 1933 petitioner had ascertained the debt to be worthless to the extent previously charged off, plus $6,000. Furthermore, giving due attention to the terms of the amended regulation, petitioner has not introduced the evidence required by the regulation itself, to wit, that the amount charged off in an earlier year was ascertained to be worthless in the later year in which the deduction is claimed. For all of the above considerations petitioner's claim to the deduction in 1938 is denied. Issue 3. The question is whether there should be included in petitioner's income amounts received by petitioner during the taxable years for reimbursement of premiums paid during previous years on a policy of life insurance held by petitioner as collateral for a loan. During 1936 and 1937, petitioner paid premiums totalling $289.50 on a life insurance policy held as collateral for a loan. The amounts so paid were added on petitioner's books to the amounts due from the debtor, and were not deducted from *501 petitioner's gross income for the years in question. The items were, however, disclosed in petitioner's returns as nontaxable. Upon the death of the insured, petitioner received from the insurance company $3,597.93. Of that amount, $2,500 was reported as nontaxable, because it represented a bad debt, which had been charged off at a time when petitioner received no tax benefit from the deduction; (see account of Lacy Brothers under Issue 1); $289.50 was allocated to the premiums paid on the insurance policy and that amount was reported by petitioner as nontaxable recovery. Respondent determined that the $289.50 should have been included in petitioner's income for the year of receipt. The amount in question did not constitute gain to petitioner. It merely represented the return to petitioner of money which it had previously paid out. The amounts had never been deducted from income either as a business expense, cf. Dominion National Bank, 26 B.T.A. 421, or as a debt ascertained to be worthless and charged off. As pointed out under the first issue, the reason why a return of capital of this nature is sometimes included in income is that the taxpayer has *502 gained a tax advantage from previous deduction of the amount recovered. Here the petitioner received no tax advantage, because it never took a deduction. The fact that petitioner might have deducted the item at a time when it would have given petitioner a tax advantage is not sufficient basis for including in income the recovered capital item. Respondent erred in including in petitioner's income the $289.50 representing return of the insurance premiums previously paid by petitioner. Issue 4. The question is what was the proper basis of the Slay property in petitioner's hands. Petitioner originally held a mortgage on the property to secure a $5,000 note of W. H. Slay. An agreement was reached whereby the property was to be taken by petitioner in discharge of the debt. However, the existence of other liens against the property, which were held subordinate to petitioner's mortgage, made it necessary to go through the form of foreclosure and sale in order to vest a clear title in the petitioner. At a foreclosure sale petitioner was the only bidder, and acquired the property, which had a fair market value of $5,000, at a bid price of $1,000. The property was appraised by petitioner's *503 real estate department and entered on its books at $5,000. Petitioner contends that the property was acquired in fulfillment of the original agreement whereby the property was to be taken in discharge of the debt, and the basis of the property should be the face amount of the debt. Petitioner's treatment of the transaction on its books is entirely consistent with that theory. Respondent argues, however, that the property was not acquired in accordance with the agreement, because of the intervention of the foreclosure sale, and that the basis should be the price bid at the foreclosure sale. The intervention of the foreclosure sale does not show conclusively that the original agreement was not carried out, rather the foreclosure sale was made necessary by the existence of other liens against the property, which could not be eliminated without proper court action. Thus it appears that the foreclosure sale was merely a necessary step in carrying out the original agreement whereby the property was received by petitioner in cancellation of the $5,000 debt. Under those circumstances, the basis of $5,000, less depreciation, claimed by petitioner, is the proper basis for determining gain *504 or loss on the sale of the property during the taxable year. Even it is held that the property was not acquired in performance of the original agreement to transfer the property in satisfaction of the debt, the basis of the property in the petitioner's hands was the fair market value at the time of the foreclosure sale. Respondent's regulations, which were upheld in Hadley Falls Trust Co. v. U.S., 110 Fed. (2d) 887, provide that where property is acquired at foreclosure by a creditor, the basis of the property is the fair market value, Regulations 101, article 33(k)-3. In the absence of clear and convincing proof, the bid price is taken to be the fair market value. In the present case, however, petitioner has shown that the fair market value was $5,000 and not the bid price. Respondent argues that petitioner's case does not come within the regulations, because at the time of acquisition petitioner did not recognize gain to the extent of the difference between the bid price and the fair market value. That failure is offset by the fact that petitioner did not take the bad debt deduction permitted under the regulations, even though it was clearly established *505 at the time that further amounts could not be collected on the debt. Under these circumstances, we are of the opinion that petitioner is entitled to use the fair market value of the property as the basis for determining gain or loss on the sale. Petitioner is sustained on this issue. Decision will be entered under Rule 50. Footnotes
*. (The total due petitioner was $176,786.10. The account was carried - $170,000 in an account entitled El Paso bank. and $6,786.10 in an account entitled "due from trust companies, banks and bankers" until sometime prior to May 6, 1932, when the latter amount was transferred to the El Paso bank account from the due from banks account).↩
1. Motor Products Corporation, 47 B.T.A. 983; Corn Exchange National Bank, 46 B.T.A. 1107, (on appeal CCA-3, September 16, September 18, 1942); Citizens State Bank, 46 B.T.A. 964; State-Planters Bank & Trust Co., 45 B.T.A. 630, reversed, 130 Fed. (2d) 44; National Bank of Commerce of Seattle, 40 B.T.A. 72, aff'd on another issue, 115 Fed. (2d) 875; see also Philadelphia National Bank v. Rothensies, 43 F. Supp. 923. Cf. Barnhart-Morrow Consolidated, 47 B.T.A. 590; Robert A. Haughey, 47 B.T.A. 1; Estate of Charles H. Robinson, 46 B.T.A. 943, (on appeal CCA-8, August 3, 1942); Estate of James N. Collins, 46 B.T.A. 765, (on appeal, CCA-8, July 14, 1942); Kennedy Laundry, Inc., 46 B.T.A. 70. (on appeal CCA-7, June 3, 1942); Western Adjustment and Inspection Co., 45 B.T.A. 721; Hurd Millwork Corp., 44 B.T.A. 786; Amsco Wire Products Corp., 44 B.T.A. 717; Walter M. Marston, 41 B.T.A. 847; Central Loan & Investment Co., 39 B.T.A. 981. The tax benefit rule was rejected in Helvering v. State-Planters Bank & Trust Co., supra; Commissioner v. United States & International Securities Corp., 130 Fed. (2d) 894; and Citizens National Bank & Trust Co. of Goose Creek v. United States, - F. Supp. -, (D.C.Tex., September 16, 1942). See also Stearns Coal & Lumber Co. v. Glenn, 42 F. Supp. 28↩ (W.D. Ky.).
2. SEC. 116. RECOVERY OF BAD DEBTS, PRIOR TAXES AND DELINQUENCY AMOUNTS. (a) Exclusion From Income. - Section 22 (b) (relating to exclusions from gross income) is amended by adding at the end thereof the following new paragraph: "(12) Recovery of Bad Debts, Prior Taxes, and Delinquency Amounts. - Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount. For the purposes of this paragraph: "(A) Definition of Bad Debt. - The term 'bad debt' means a debt on account of worthlessness or partial worthlessness of which a deduction was allowed for a prior taxable year. "(B) Definition of Prior Tax. - The term 'prior tax' means a tax on account of which a deduction or credit was allowed for a prior taxable year. * * * * *
"(D) Definition of Recovery Exclusion. - The term 'recovery exclusion', with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount. which did not result in a reduction of the taxpayer's tax under this chapter (not including the tax under section 102) or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable year with respect to such debt, tax, or amount under this paragraph." * * * * *
(c) Under Prior Revenue Acts. - ↩ For the purposes of the Revenue Act of 1938 or any prior revenue Act. the amendments made to the Internal Revenue Code by subsection (a) of this section shall be effective as if they were a part of each such revenue Act on the date of its enactment.
3. (c) Where banks or other corporations which are subject to supervision by Federal authorities (or by State authorities maintaining substantially equivalent standards) in obedience to the specific orders of such supervisory officers charge off debts in whole or in part, such debts shall be conclusively presumed, for income tax purposes, to be worthless or recoverable only in part, as the case may be, but in order that any amount of the charge-off may be allowed as a deduction for any taxable year it must be shown that the charge-off took place within such taxable year. But no such debt shall be so conclusively presumed to be worthless or recoverable only in part as the case may be, if the amount so charged off is not claimed as a deduction for the taxable year in which such charge-off takes place. If a taxpayer does not claim a deduction in its return for such a totally or partially worthless debt for the year in which such charge-off takes place, but claims such a deduction for a later year, then such charge-off in the prior year will be deemed to have been involuntary and the deduction shall be allowed for the year for which claimed, if the taxpayer produces sufficient evidence to show (1) that the amount claimed in such later year was ascertained to be worthless or recoverable only in part, as the case may be, in such year, and (2) that, to the extent that the deduction claimed in the later year was not involuntarily charged off in prior years, it was charged off in the later year.↩