### PHILADELPHIA NAT. BANK v. ROTHENSIES, Collector of Internal Revenue.

### No. 1659.

District Court, E. D. Pennsylvania.

March 5, 1942.

924

George Wharton Pepper and Frederick H. Spotts, of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., and Lester L. Gibson, Sp. Asst. to Atty. Gen., for defendant.

KIRKPATRICK, District Judge.

This is a suit to recover income and excess profits tax paid by the plaintiff, a national bank, for the year 1937. All relevant facts have been stipulated.

For the years 1931 to 1936 inclusive, the plaintiff charged off bad debts in large amounts and took corresponding deductions in its tax returns. In each year the deductions were greatly in excess of the net income and there was a deficit after the charge-off, the total of such deficits being more than $10,000,000.

In 1937 the plaintiff made recoveries amounting in all to $393,357.94 on account of the debts so charged off. Included in the total were recoveries upon debts charged off in each of the years in question, but the recovery for no one year was sufficient to make up the deficit in net income for that year, and hence the plaintiff takes the position that the charge-offs, to the extent to which they were later recovered, did not accomplish any reduction in its tax liability, because even had the deductions not been taken there still would have been no net income.

It is agreed that the sole question is whether the sum of $393,357.94 should be included in the plaintiff's taxable income for the year 1937.

Prior to 1937 the Bureau of Internal Revenue had held that amounts subsequently recovered on account of debts previously charged off and allowed as a deduction for income tax purposes must be included as gross income for the year in which received, whether or not the prior allowance of the deduction had resulted in a benefit to the taxpayer. This view had been sustained by the Board of Tax Appeals in Lake View Trust and Savings Bank v. Commissioner, 1932, 27 B.T.A. 290. However, in 1937, the Bureau promulgated G.C. M. 18525 (modified later by G.C.M. 20854, to cover the case of voluntary charge-offs by banks) and in 1939 acquiesced in two decisions of the Board of Tax Appeals which held that subsequent recoveries were to be included as income in the year of recovery only if the earlier deductions had accomplished a reduction in tax liability. See Central Loan & Investment Co. v. Commissioner, 39 B.T.A. 981, and National Bank of Commerce of Seattle v. Commissioner, 40 B.T.A. 72.

In 1940 the Bureau, by G.C.M. 22163, again reversed its position, revoked the earlier rulings, and withdrew the acquiescences. G.C.M. 22163 ruled that the recoveries constituted taxable income whether or

not the prior allowance of the deduction has resulted in any tax benefit to the taxpayer.

■ The foregoing administrative history is cited for whatever value it may have, but plainly, it does not offer the solution of the problem now before the Court. There is no such history of consistent and well settled Treasury regulations and interpretations adopted by Congressional acquiescence and re-enactment as will write into the Statute a rule to govern this case. The question can be dealt with only upon the basis of fundamental principles.

■ I think that it must be agreed that the repayment of a debt is a return of capital. To my mind, no process of reasoning can make it anything else. Being in fact capital, it does not become income merely because it is not returned as agreed or when expected, or even if the owner concludes in his own mind that he will never get it again. To justify a tax upon the repayment of a debt by referring it to the statutory definition of gross income would undoubtedly extend the statute beyond the constitutional powers of Congress.

■ But a taxpayer may voluntarily submit to an otherwise illegal or unconstitutional imposition, and, if it is a condition of some benefit which is tendered to him, his acquiescence will be assumed or implied from his acceptance of the benefit. Deductions allowed by law from gross income are not matters of right but of grace. When a taxpayer claims and is allowed a bad debt against his taxable income there is no difficulty in finding an implied consent to be taxed in respect of future recovery of the bad debt, whether or not it is actually income. Whether this be called an implied agreement of waiver for valid consideration or an estoppel, is not of great importance.

The argument does not require that one take the position that the recovery is income under one set of circumstances and capital under another, as the Court did in National Bank of Commerce v. Commissioner, 9 Cir., 115 F.2d 875. It goes no further than to say that the taxpayer has agreed that a recovery of capital may be taxed as income, or is estopped to object.

■ The sole question is the scope of the waiver. To what extent does the taxpayer, by accepting the benefit of the statutory deduction, agree that a tax may be levied if and when the subject of it is returned? It seems to me that the question answers itself. In the absence of express terms, considerations of equity and fair dealing forbid that the waiver or the acquiescence be carried beyond the benefit received, and the same applies if it be considered as an estoppel. I am of the opinion that the revoked ruling of G.C.M. 18525 was a correct statement of the applicable rule of the law, and that the tax cannot be imposed upon recoveries of bad debts, unless the deductions for them resulted in benefit to the taxpayer by reducing his tax liability.

It remains to apply the rule to the facts of the present case. Perhaps it will simplify the discussion if we take a single taxable year and deal with round numbers. Thus, in 1931, the plaintiff reported a net income of $2,800,000 after all deductions, except bad debts, and made a charge-off of bad debts in the amount of $5,300,000, leaving it $2,500,000 in the red. Now it appears that the $393,357.94 of the total recoveries, $100,000 was received on debts charged off in 1931. (Earlier recoveries amounting to about $300,000 may be disregarded for the purposes of this discussion.) Did the taxpayer receive a tax benefit in 1931 from the $100,000 of debts recovered in 1937?

There is nothing in the stipulation by which the actual debts upon which the recoveries were made can be identified, and there is nothing to show that the taxpayer in 1931 segregated any particular bad debts to apply against its net income of $2,800,000 for the purpose of reducing its tax liability.

■■ If the plaintiff were now claiming an exemption or deduction, the burden of proof, of course, would be upon it. This, however, is not the case. The real situation is that the Government is proposing to tax a return of capital, upon the theory that the taxpayer by having received a benefit has made itself liable to the tax as though it were upon income. The burden of proving an estoppel is on the Government and consequently it and not the plaintiff had to show that the particular $100,000 recovered in 1937 upon the debts making up the 1931 deductions of $5,300,000 were applied to reduce net income. This has not been shown. As a matter of fact the Government assumes for the purposes of its argument that the charge-offs in the earlier years did not reduce the plaintiff's tax liability. The same

considerations apply to all the other years in question as to 1931. Consequently the fact finding must be made that the $393,357.94 in respect of which the additional tax for 1937 was paid did not accomplish a reduction in the plaintiff's tax liability for any of the years 1931 to 1936 inclusive.

Of course, if in any one of the years in question the taxpayer had returned a net income after all bad debts had been charged off, the burden of proof would have been met and the recovery would have been taxable to the extent to which the charge-off benefited the taxpayer.

I do not think that the basis of the decision of this case is inconsistent with Burnet v. Sanford & Brooks Co., 282 U.S. 359, 51 S.Ct. 150, 151, 75 L.Ed. 383. The recovery there was of a sum of money as a judgment in a suit upon a contract for breach of warranty. The taxpayer, a contractor for dredging, had found the material to be dredged more difficult than it had been warranted, and consequently had been compelled to incur much greater expense than anticipated. The Court pointed out that the recovery was income. Except for the year in which the money was received, the situation was about what it would have been if, instead of waiting to be sued, the contractee (in that case the Government) had voluntarily increased the contract price to cover the additional cost (which was what it should have done) and paid it to the contractor as the work progressed. The Court said, "That the recovery made by respondent in 1920 was gross income for that year within the meaning of these sections cannot, we think, be doubted. The money received was derived from a contract entered into in the course of respondent's business operations for profit. While it equalled, and in a loose sense was a return of, expenditures made in performing the contract, still, as the Board of Tax Appeals found, the expenditures were made in defraying the expenses incurred in the prosecution of the work under the contract, for the purpose of earning profits. They were not capital investments, the cost of which, if converted, must first be restored from the proceeds before there

is a capital gain taxable as income." The point with which the decision dealt was the year in which the recovery was taxable. Here we are dealing not with income but with capital, and the only question is whether the taxpayer has impliedly agreed that it shall be taxed as though it were income.

For the same reason I find myself unable to agree with the District 'Court for the Western District of Kentucky in Stearns Coal & Lumber Co. v. Glenn, 42 F.Supp. 28. It is extremely doubtful whether the question which appears to me controlling was presented to the Court in that case and, as has been stated, I cannot accept Burnet v. Sanford & Brooks Co., supra, as dispositive of it as the Court in the Stearns case seemed to do. In a recent opinion (Second National Bank of Nashua v. Commissioner, Dec. 29, 1941) the Board of Tax Appeals declined to follow the decision in the Stearns case.

In Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, the Court was considering a case in which the charge-off had resulted in a tax benefit to the taxpayers. The Court pointed out that the taxpayer was estopped to question the inclusion of the recoveries in his gross income for tax purposes in the year in which they were made. In my view, it was unnecessary to go further, as the 'Court did, and apply Burnet v. Sanford & Brooks Co. as a controlling authority, and, for the reasons stated, I am unable to follow that portion of the Court's opinion.

It might be pointed out also that in none of the cases in which the courts have sustained taxation of recoveries of bad debts on theories other than the one here presented were the courts faced with the problem of recoveries of debts the deductions for which had not resulted in tax benefits.

The facts are found as stipulated.

The Court concludes as a matter of law that, upon the facts, the plaintiff is entitled to recover the amount of the tax in question with interest.

Judgment may be entered for the plaintiff in the amount claimed with interest.