HARWICK v. COMMISSIONER OF INTERNAL REVENUE.

HELVERING, Com'r of Internal Revenue, v. DOBSON (two cases).

DOBSON v. HELVERING, Com'r of Internal Revenue.

HELVERING, Com'r of Internal Revenue, v. COLLINS' ESTATE.

Nos. 12421, 12425, 12430, 12426, 12429.

Circuit Court of Appeals, Eighth Circuit.

March 2, 1943.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Louise Foster, Sp. Assts. to Atty. Gen., were on the brief), for Commissioner of Internal Revenue.

John W. Windhorst, of Minneapolis, Minn. (Leland W. Scott and Fletcher, Dorsey, Barker, Colman & Barber, all of Minneapolis, Minn., on the brief), for the taxpayers.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

These cases come here upon petitions to review decisions of the United States Board of Tax Appeals. By order of court they have been consolidated for briefing, hearing, argument and decision.

Several years before the taxable year 1939, the four taxpayers, all residents of the state of Minnesota, had at various times individually purchased, in transactions entered into for profit, shares of the capital stock of the National City Bank of New York, such stock carrying beneficial interests in the stock of the National City Company of New York. The purchases were made in the state of Minnesota from the National City Company. Each taxpayer sold a part or all of such stock at losses which were claimed and allowed as deductions on their income tax returns for 1930 and 1931.

On a sale of 200 shares E. W. Dobson in 1930 deducted a loss of $49,302.56 and his return showed a net loss of $30,197.56; John V. Dobson for sales in 1930 deducted $62,271 and showed in his return a net loss of $30,043.47; James N. Collins deducted and was allowed $41,600.80 for 1930 and $28,163.78 for 1931 and his net loss for these years was $65,896.51 and $40,204.90, respectively; and H. J. Harwick was allowed a deduction in 1931 for a loss of $34,451.28, and he reported a net income of $12,042.03, but due to certain credits he owed no tax.

For several years the taxpayers regarded these purchases and sales as completed transactions. In 1936, 1937 and 1938 they learned for the first time that the stock had not been registered under the Blue Sky laws of Minnesota and that the sales to each of them may have been fraudulent. Thereupon H. J. Harwick asserted a claim against the National City Company, and the other three taxpayers filed suits against the Company alleging (1) that the stock sold had not been registered as required by law and (2) that the sales had been fraudulent. They requested rescission of the sale contracts and offered to turn over to the Company the proceeds of the stock sales or an equal number of shares plus interest and dividends received.

Harwick's claim and the suits were all settled in 1939. In the settlement Harwick received a net amount of $17,000 and reported $9,884.22 as income, conceding that he had received a tax benefit for that amount in 1931. He contended that the remaining $7,115.78 should not be taxed, because he could have added this amount to his 1931 gross income without tax liability resulting for the reason that credits to which he was entitled more than offset his net income. E. W. Dobson received $31,432.80; John V. Dobson $32,294.96; and James N. Collins $23,296.45, all of which recoveries were allocable to 1930 sales. Collins also received $6,454.18 allocable to a 1931 sale. Neither the Dobsons nor Collins reported any part of these sums as income in 1939, but the Commissioner included them all, as well as the $7,115.78 received by Harwick.

Through the year 1939 adjustment of the taxpayers' income tax liability for the years deductions were claimed and allowed was barred by the statute of limitations.

The Board held that the recoveries in 1939 were in the nature of a capital recovery and were not subject to tax, unless the loss deductions of the prior years had actually offset gross income of those years and had thus resulted in a tax benefit. On this theory the Board held that E. W. Dobson and James N. Collins having realized no tax benefit from the loss deductions in 1930 and 1931, the sums recovered by them in 1939 were not taxable; that John V. Dobson having realized a tax benefit on $2,251.49, that sum was taxable in 1939 as ordinary income and was not capital gain; and that Harwick, having a net income in 1931, received a tax benefit on the entire recovery and that it should be included in his 1939 return.

The opinion of the Board in John V. Dobson's case is reported in Dobson v. Commissioner, 46 B.T.A. 770, and that of the Estate of James N. Collins in Collins v. Commissioner, 46 B.T.A. 765. Opinions in the other cases are not officially reported.

The Commissioner contends that the recoveries of the taxpayers in 1939 relative to deductions claimed and allowed in 1930 and 1931 should all be included in their gross incomes for the year 1939 under § 22 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22, and taxed as ordinary income, and that the Board erred in refusing so to hold and in refusing to redetermine a deficiency in the case of E. W. Dobson in the amount of $7,490.86; in the case of John V. Dobson in the amount of $9,108.06; and in the case of the estate of James N. Collins in the amount of $2,644.58.

The taxpayers all contend that the Board correctly held that the taxability of the recoveries in 1939 depends on whether the 1930 and 1931 deductions attributable to sales of stock resulted in a tax benefit. Harwick and John V. Dobson in their appeals contend that the Board erred in holding that a tax benefit depends upon whether the losses produced a deficit in the taxpayers' net income for 1930 and 1931. They urge that a tax benefit depends on an actual saving in tax dollars for those years. All the taxpayers assert that to whatever extent taxable gain is found to exist by reason of the 1939 recoveries, such income is taxable as capital gain under § 117 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 117, and not as ordinary income under § 22.

As a result of the Board's refusal to accept the contentions of the several taxpayers, Harwick contends that it erred in failing to order a refund to him in the amount of $2,914.84 on account of the inclusion in his 1939 return of gross income in the sum of $9,884.22 reported by him as ordinary income in that year, and in redetermining a deficiency of $4,629.01 for 1939. John V. Dobson contends that the Board erred in redetermining a deficiency in his income tax liability for 1939 in the amount of $472.82 as a result of including $2,251.49 of his recovery in gross income for that year; and that, if such sum should be included, it should be taxed as capital gain and not as ordinary income.

A fact characteristic of all these cases is that the purchase price paid for the stock by each taxpayer was in excess of the proceeds received by him from the sale of the stock in 1930 and 1931 and the recovery from the National City Company in 1939 combined. As a whole the stock investment was a losing venture. The cases present only questions of law.

The first matter to be determined is the question of the validity of the tax benefit theory applied by the Board to the taxability of the recovery in the taxable year of a capital loss sustained, and claimed and allowed as a deduction, in a prior year.

The conclusion of the Board and its reason therefor are stated in its opinion in the John V. Dobson case, 46 B.T.A. 770,

in the following language: "Where there is recovery in respect of a loss sustained in an earlier year and a deduction of such loss claimed and allowed for the earlier year had effected an offset in taxable income, the amount recovered in the later year should be included in taxable income for the year of recovery, the reason being that even though the subsequent recovery is in the nature of a capital recovery the prior deduction of the amount of the loss from taxable income has for income tax purposes already given the taxpayer a recoupment of said loss out of taxable income and the subsequent recovery, being in the nature of a replacement of taxable income, is equivalent to gain to the taxpayer. National Bank of Commerce of Seattle v. Commissioner, [9 Cir.], 115 F. 2d 875, affirming 40 B.T.A. 72. But where the deduction claimed and allowed in the prior year did not effect an offset of taxable income, the amount recovered in a later year does not constitute taxable income for the year of recovery."

The Board's explanation of its decision is not found in the Revenue Acts in effect in 1930, in 1931, or in 1939, nor in any of the regulations thereunder. The taxpayers, however, relying upon the decision of the Supreme Court in Eisner v. Macomber, 252 U.S. 189, 206, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, say that for constitutional reasons the tax cannot be sustained at all, unless it be upon the tax benefit theory. It is urged that there is no magic sufficient to convert capital into income for tax purposes. They argue that if there be such "magic" it is found in and limited in its application by some form of offset or recoupment.

We are of the opinion that the constitutional question discussed in the Macomber case is not presented in these cases. Decision depends upon the application of well-settled principles of tax laws. The losses here were claimed and allowed pursuant to the privilege granted under § 23(e) (2) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, page 357. The pertinent part of the Act provides that in computing net income there shall be allowed as deductions, "In the case of an individual, losses sustained during the taxable year * * * (2) if incurred in any transaction entered into for profit, though not connected with the trade or business."

The adoption of the tax benefit theory seems to be an injection into the law of an equitable principle, found neither in the statutes nor in the regulations, for the purpose apparently either of avoiding constitutional restrictions or of granting to the taxpayer relief in hard cases. In Deputy v. du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416, the Supreme Court said: "* * * allowance of deductions from gross income does not turn on general equitable considerations. It 'depends upon legislative grace.'" Citing New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348. See, also, Citizens National Bank v. Commissioner, 8 Cir., 122 F.2d 1011, 1013; White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172; Helvering v. Insurance Co., 294 U.S. 686, 689, 55 S.Ct. 572, 79 L.Ed. 1227. It follows that when deductions for losses are taken, they can be taken on such conditions only as the government prescribes.

When the taxpayers here claimed and were allowed the deductions for losses on sales of stock in 1930 and 1931 under § 23(e) (2), supra, at least three conditions inhered in the allowance. First, any future adjustment or corrections were subject to the statute of limitations. Revenue Act of 1928, § 275(a), 26 U.S.C.A. Int.Rev.Acts, page 429. Second, Article 342 of Treasury Regulations 74, promulgated under the Revenue Act of 1928, provided that "The expenses, liabilities or deficit of one year can not be used to reduce the income of a subsequent year." The regulation is consistent with the rule that the federal income tax system is based on an annual accounting. Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365, 51 S.Ct. 150, 75 L.Ed. 383; Burnet v. Thompson Oil & Gas Co., 283 U.S. 301, 306, 51 S.Ct. 418, 75 L.Ed. 1049; Woolford Realty Co. v. Rose, 286 U.S. 319, 326, 52 S.Ct. 568, 76 L.Ed. 1128; Brown v. Helvering, 291 U.S. 193, 198, 199, 54 S.Ct. 356, 78 L.Ed. 725; Helvering v. Morgan's, Inc., 293 U.S. 121, 126, 127, 55 S.Ct. 60, 79 L. Ed. 232; Guaranty Trust Co. v. Commissioner, 303 U.S. 493, 497, 498, 58 S.Ct. 673, 82 L.Ed. 975; Heiner v. Mellon, 304 U.S. 271, 275, 58 S.Ct. 926, 82 L.Ed. 1337. A third condition of the allowance of deductions for capital losses under the Revenue Act of 1928, as well as of the earlier and later Revenue Acts, is the requirement

that such losses must be "realized" by some closed and completed "identifiable event" which definitely settles and determines the existence of and the amount of such losses. Shoenberg v. Commissioner, 8 Cir., 77 F. 2d 446, 448, and cases cited. See, also, Higgins v. Smith, 308 U.S. 473, 481, 60 S.Ct. 355, 84 L.Ed. 406.

■ The contention of the taxpayers requires these three conditions of the revenue laws to be evaded or ignored. The statute of limitations will be evaded by adjusting deductions in 1939 on the basis of equitable considerations resulting from events occurring in 1930 and 1931. Treasury Regulation 74 will be violated by using the deficits of one taxable year to reduce the income of a subsequent year; and a capital transaction represented by the taxpayer to be "closed and completed" in 1930 and 1931 must be reopened in 1939 in violation of all three of the conditions stated above. There is no escape under the law from the fact that the capital transactions of the taxpayers were closed and their capital losses claimed and allowed in the years when the stocks were sold. The recoveries received in 1939 resulting from discovered fraud in the original purchases were income in the year received. It is immaterial whether the claim was settled before suit, as in Harwick's case, or after suit was begun; and it is immaterial whether the taxpayer invoked as a remedy for fraud the right to rescission or the right to damages. In any case the recovery was income when received. Any diminution of gross income in 1939 because of lack of complete tax benefits from the deductions taken in 1930 and 1931 constitutes in reality a deduction in 1939 based upon equitable considerations and not upon the authority of an Act of Congress.

The circumstances in the case of Griffiths v. Helvering, Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319, are so strikingly similar to the facts in this case that the decision illustrates the accepted view of the law, even though the tax benefit theory was not discussed. Griffiths, the taxpayer, paid one Lay $100,000 for some stock in 1926. The investment was unprofitable, and as the result of the sale of the stock to a family corporation Griffiths was allowed a deductible loss of $92,500 by the Commissioner for the year 1931. In 1933 Griffiths learned that he had been defrauded by Lay in the 1926 sale.

Through a settlement with Lay in 1933 the stock, through a complicated series of transactions entered into to disguise the rescission of the original purchase, was transferred back to Lay and Griffiths personally received from Lay $100,000. The Commissioner ruled that Griffiths, having been allowed a deduction for loss attributable to the stock purchased from Lay and having now recouped that loss through settlement of his claim against Lay, was subject to tax for the amount of the settlement in 1933. The Supreme Court held that "the Commissioner was right", and affirmed the decision of the Seventh Circuit Court of Appeals, Commissioner v. Griffiths, 103 F.2d 110.

Since the Board decided these cases the question of the application of the equitable doctrine involved in the tax benefit theory has been passed upon by the Third and Fourth Circuit Courts of Appeals in cases involving the recovery of bad debts and decided adversely to the theory of the Board and the contentions of the taxpayers. Helvering v. State-Planters Bank & Trust Co., 4 Cir., 130 F.2d 44, 46; Commissioner v. United States & International Securities Corporation, 3 Cir., 130 F.2d 894. In the first of these cases, Judge Parker, speaking for the court, observed that: "There is nothing in the regulation or in any statute which makes the inclusion in gross income of collections on bad debts, previously charged off as worthless, dependent upon whether or not the charge off has resulted in a tax benefit to the taxpayer." The court held that when the taxpayer charges off and is allowed a deduction for a bad debt in one year, he thereby under the existing regulations impliedly consents that a subsequent recovery shall be treated as income and not as a restoration of capital. In substance it was held that a taxpayer who obtains the allowance of a deduction for a bad debt, or capital loss, under a statute permitting such privilege, is bound by a regulation providing that any subsequent recovery of any part of such bad debt "must be included in gross income for the taxable year in which received."

These decisions are in agreement with Stearns Coal & Lumber Co. v. Glenn, D.C. Ky., 42 F.Supp. 28. The only case cited by the taxpayers reaching a contrary conclusion is that of Philadelphia National Bank v. Rothensies, D.C.Pa., 43 F.Supp. 923, 925, in which it was held that the im-

plied consent of the taxpayer, in the absence of express terms, cannot "be carried beyond the benefit received."

We think the allowance of deductions from gross income cannot be made to depend upon general equitable considerations, such as are involved in the tax benefit theory; and that the taxpayers are barred by the conditions on which the government granted the deductions in the earlier years.

For the foregoing reasons we hold that the recoveries of the taxpayers in 1939, allocable to the sales of stock in 1930 and 1931, constitute taxable gain in the year received.

Harwick and John V. Dobson do not agree with the Board in the application of the tax benefit theory to their cases, but, since we hold that the tax benefit theory must be rejected entirely, it is unnecessary to discuss their contentions in this respect.

In view of our conclusion above there remains for consideration only the question whether the 1939 recoveries must be treated as ordinary income under § 22 or as long-term capital gains under § 117 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 117.[1] Under the latter section only fifty per cent. of the recoveries would be taxable.

The question to be determined is whether the payments to the taxpayers by the National City Company in settlement of their claims constitute gain realized in a "sale or exchange" of a capital asset. It is not contended that an actual sale or exchange occurred in 1939 upon the settlement of the taxpayers' claims, but that the payments in 1939 take their character as capital gain from the sales of the stock in 1930 and 1931. This conclusion is arrived at in this way. It is said (1) that the taxpayers' claims against the National City Company were based on the right to rescind the stock purchase and to secure a refund of the purchase price; (2) that the

Commissioner admits that where a taxpayer had not sold his stock the recovery in 1939 attributable to such unsold stock was not taxable; and (3) that, therefore, the receipt of income in 1939 (to whatever extent taxable) represented "gain from the sale" of the stock in 1931 which was not taxable until received in 1939.

The contention lacks merit. The Commissioner did not admit that deductions which had been claimed and allowed as a result of sales in 1930 and 1931 could be converted into non-taxable recoveries in 1939. There was no causal relation between the sales in the former years and the recoveries in the latter. The sales of stock and the settlements of the claims were different and distinct transactions. The settlements considered separately were neither sales nor exchanges within the meaning of the statute. Lee v. Commissioner, 7 Cir., 119 F.2d 946; Bingham v. Commissioner, 2 Cir., 105 F.2d 971; Hale v. Helvering, 66 App.D.C. 242, 85 F.2d 819. The taxpayers sold nothing in 1939 to the National City Company and the National City Company purchased nothing from the taxpayers. Neither was there an exchange, for "exchange", as used in the statute, means reciprocal transfers of capital assets. Helvering v. Flaccus Leather Co., 313 U.S. 247, 249, 61 S.Ct. 878, 85 L.Ed. 1310. The sales of stock were completed transactions in 1930 and 1931, and they can neither in fact nor in law be coupled with the settlements in 1939 so as to transform the two events into a single sale or exchange of capital assets. The Board was right in holding that the recoveries in 1939 were taxable as ordinary income and not as long-term capital gains.

The decision of the Board in No. 12,421, Harwick v. Commissioner, is affirmed.

In No. 12,430, Helvering v. E. W. Dobson, and in No. 12,429, Helvering v. Es-

---

[1] Section 22 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 22, provides:

" 'Gross income' includes gains, profits, and income derived from * * * trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

Section 117(a) provides:

"(4) Long-term capital gain. The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such gain is taken into account in computing net income;

"(5) Long-term capital loss. The term 'long-term capital loss' means loss from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such loss is taken into account in computing net income."

tate of James N. Collins, the decisions are reversed and the cases remanded with instructions to tax as ordinary income the entire recoveries attributable to the losses claimed and allowed in previous years.

In the John V. Dobson cases, Nos. 12,-425 and 12,426, the decision is reversed and the cases remanded with instructions to tax as ordinary income the entire amount recovered in 1939 attributable to the loss claimed and allowed in 1930.