CRABTREE, J.T.C.
Plaintiffs seek review of defendant’s denial of their respective claims for refund of gross income tax for taxable year 1987. Plaintiffs claim that they received no tax benefit from partnership losses sustained in prior years and, therefore, the income they realized in a certain foreclosure sale should be reduced.
All the relevant facts have been stipulated and the case is submitted pursuant to R. 8:8-l(b).
At all times pertinent hereto plaintiffs were 50% partners in Gemini Fashions, a New Jersey partnership engaged in the business of manufacturing ladies’ coats. In 1981 Gemini purchased a 3.3% interest in Holiday Associates of JFK Limited Partnership (“Holiday”) for the sum of $95,000. Holiday’s business was the operation of a hotel at Kennedy Airport. Holiday was formed in 1981 and, in that year, acquired the land and hotel property for $9,781,542. The acquisition was financed with a first mortgage loan from Manhattan Savings Bank for $3,117,295, a second mortgage loan from Barclay’s American Credit Corp. for $4,400,000 *308 and loans from the sellers amounting to $2,316,677, secured by purchase money mortgages.
The Schedule K-l issued by Holiday to Gemini for 1981 indicates that the latter’s share of Holiday’s liabilities was $418,930, which, along with the $95,000 cash, constituted Gemini’s initial, unadjusted basis in its 3.3% partnership interest in Holiday. Sections 705, 722, 752, Internal Revenue Code of 1954.
Holiday’s income and expenses as shown on its U.S. Partnership Return of Income (Form 1065) for calendar years 1981 through 1986 were as follows:
1981
$ 810,007 Gross income
$ 57,902 Expenses: Salaries
32,000 Guaranteed payments to partners
710,435 Interest
164,236 Taxes
676,759 Repairs
974,467 Depreciation
5,528 Amortization
770,450 $3,391,777 Other deductions
($2,581,770) Loss
1982
Gross income $2,048,814
Expenses:
Salaries $ 158,957
Guaranteed payments to partners 76,500
Interest 1,226,316
*309 Taxes 388,752
Repairs 89,998
Depreciation 1,632,497
Other deductions 1,171,663 $4,744,663
Loss ($2,695,849)
1983
Gross income $3,825,067
Expenses:
Salaries $1,665,595
Guaranteed payments to partners 100,500
Interest 1,089,823
Taxes 493,458
Bad debts 10,216
Repairs 107,725
Depreciation 1,557,998
Other deductions 2,184,213 $7,209,528
Loss ($3,384,461)
*310 1984
Gross income $4,422,701
Expenses:
Salaries $2,007,546
Interest 1,368,023
Taxes 410,692
Bad debts 67,282
Repairs 96,195
Depreciation 1,512,476
Other deductions 2,080,368 $7,542,582
Loss ($3,119,881)
1985
Gross income $1,230,280
Expenses:
Interest $1,187,545
Taxes 548,956
Repairs 144,130
Depreciation 1,448,422
Other deductions 811,893 $4,140,946
Loss ($2,910,666)
*311 1986
Gross income $1,248,383
Expenses:
Salaries $ 152,822
Interest 120,742
Taxes 415,499
Repairs 131,802
Depreciation 392,437
Employee benefit programs 16,577
Other deductions 730,880 $1,960,759
Loss ($ 712,376)
Gemini’s share of Holiday’s losses for the years 1981 through 1986 was 3.3%. Those losses were reported to be:
1981 ($ 85,199)
1982 ($ 88,963)
1983 ($106,614)
1984 ($102,956)
1985 ($ 96,052)
1986 ($ 23,508)
Gemini’s income for the years 1981 through 1986, before deducting its distributive share of Holiday’s losses, but after losses from another partnership investment were taken into account, were:
1981 $11,111
1982 ($ 8,385)
1983 $18,023
1984 ($ 47)
1985 ($14,188)
1986 ($79,471)
*312 Plaintiffs deducted their distributive shares of the losses passed through from Holiday to Gemini, then from Gemini to plaintiffs, on their Federal income tax returns for the years 1981 through 1986. They derived a tax benefit from these deductions as their incomes exceeded their deductions, including the loss deductions. However, plaintiffs could not deduct any of the losses for New Jersey gross income tax purposes as they had no income from other partnerships in those years. The New Jersey Gross Income Tax Act provides that net losses in one income category may not be applied against income in another category. N.J.S.A. 54A:5-2.
In 1987, the second mortgagee, Barclays American/Business Credit, Inc.,[1] foreclosed on the property, and judgment of foreclosure and sale was entered April 3, 1987 in the Supreme Court of New York, Queens County. All mortgages were joined in this action. The amount realized for Federal income tax purposes was $9,688,353, representing the total amount of principal and accrued interest due on the first and second mortgages. The adjusted basis of the hotel property, plus the expense of sale, amounted to $3,370,649, producing a recognized gain of $6,317,704.
For Federal income tax purposes Holiday realized $12,575,792 in ordinary income as a result of the foreclosure, of which $6,317,-704 consisted of a § 1231 gain treated as ordinary income because of depreciation recapture; the balance of $6,258,088 was reported on Holiday’s 1987 return as cancellation of indebtedness income,[2]
*313 Gemini’s share of Holiday’s 1987 foreclosure income, as reported for Federal income tax purposes, was $414,891, the amount of its negative capital account at the end of 1987. [3]
Each plaintiff reported on his 1987 Federal income tax return 50% of the gain arising from the foreclosure proceeding, namely $207,445 ($414,891 - 2).
Each plaintiffs 1987 New Jersey Gross Income Tax Return contained a schedule adjusting the non-usable Holiday losses passed through to the plaintiffs during the years 1981 through 1986 and restoring those unused losses to basis. The effect was a reduction in taxable gain from $207,445 to $8,978 and a claimed overpayment.
Defendant disallowed the adjustment and determined that each plaintiffs basis in the hotel was the basis used for Federal Income Tax purposes and, accordingly, the gain in the foreclosure action was the same as the gain reported for Federal income tax purposes (including the alleged cancellation of indebtedness income). Defendant relied upon N.J.S.A. 54A:5-l(c) which provides in part: “... For the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes.”
These actions for refunds followed.
The parties agree that the tax benefit rule, judicially developed in the Federal system before Congressional codification in sections 111 and 1016 of the Code, applies in principle to the New Jersey *314 Gross Income tax. The dispute centers on the application of the rule to the facts of this case and the quantum of adjustments, if any, to be made to plaintiffs’ distributive shares of Holiday’s basis.
For federal income tax purposes the foreclosure sale of Holiday’s hotel property in 1987 is treated as a sale or exchange. Helvering v. Hammel, 311 U.S. 504, 61 S.Ct. 368, 85 L.Ed. 303 (1941). The gain (or loss) on the sale is the difference between the amount realized and the adjusted basis. Section 1001(a), Internal Revenue Code. Under Crane v. Commissioner, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947) and Treas.Reg. § 1.1001-2(a) the amount realized includes the amount of liabilities from which the transferor is discharged as a result of the sale or other disposition. This is so even if the liability is nonrecourse and the value of the collateral is less than the principal amount of the debt. Commissioner v. Tufts, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983). The amount realized includes both senior and junior debt that is extinguished as a result of the foreclosure. Harris v. Commissioner, TC Memo 1975-125.
Adjustments to basis are made for, inter alia, depreciation allowed or allowablé in prior years to the extent that depreciation deductions reduced taxes but no less than the amount allowable. Section 1016(a)(2). In the case of property held by a partnership, the computation of the tax benefit amount allowed in prior years must take into account the tax benefit of the partners from the deduction by the partnership of the depreciation allowed. Treas. Reg. § 1.1016-3(e)(4).
In the determination of gain or loss from the sale or other disposition of section 1231 property (i.e., depreciable real property used in the taxpayer’s trade or business) held by a partnership, other partnership expenses are ignored. Partnership losses passed through to partners simply reduce the latter’s basis in the partnership; the losses have nothing to do with adjustments to basis of partnership property. Section 702(a)(3) of the Code requires that gain or loss on the sale or exchange of section 1231 property be passed through to the partners separate and apart from all other items of partnership income or loss. See also Treas.Reg. § 1.702-l(a)(3).
*315 Thus, for Federal income tax purposes, the adjusted basis of partnership property is separately determined without regard to other categories of partnership income or loss. The same rule applies under New Jersey law. As Holiday was not engaged in the business of buying and selling § 1231 properties (an oxymoron if ever there was one), the gain realized on the hotel foreclosure cannot be characterized as a partnership distribution of income cognizable under N.J.S.A 54A:5-l(k), but must be treated as a gain from the sale, exchange or other disposition of property cognizable under N.J.SA 54A:5-l(c). Cf Smith v. Director, Div. of Taxation, 108 N.J. 19, 527 A.2d 843 (1987) (taxpayers, in determining their distributive share of partnership income for purposes of N.J.S.A 54A:5-1(k), were allowed to deduct partnership business expenses against all types of partnership income, including dividends and capital gains, realized in the ordinary course of the partnerships’ securities business). Plaintiffs’ utilization of total losses sustained by Holiday, filtered through Gemini and partly reduced by Gemini’s operating income, is erroneous under both Federal and New Jersey law.
Accordingly, under both Federal and New Jersey law, the gain realized on the hotel foreclosure is separately treated, plaintiffs were unable to use Holiday’s losses (which included depreciation deductions) for New Jersey Gross Income Tax purposes in the years 1981 through 1986, as N.J.SA 54A:5-2 prohibits netting of intercategory income and losses and they had no other income from other partnerships.
The issue is thus narrowed: are plaintiffs entitled to an adjustment of their distributive share of basis in Holiday’s property to the extent of Holiday’s depreciation deductions in the years 1981 through 1986 which they were unable to use in calculating their New Jersey gross income tax liability, notwithstanding the requirement of N.J.SA 54A:5-l(c) that Federal basis be used in *316 determining gain upon the sale, exchange or the disposition of property?[4]
Resolution of this issue requires a detailed examination of § 1016(a)(2) of the Internal Revenue Code and the Regulations promulgated thereunder, but before the court undertakes that examination, the tax benefit rule, which defendant concedes is applicable in principle in New Jersey, will be explored.
The tax benefit rule is a judicially developed doctrine under Federal law, ultimately codified in the Internal Revenue Code in §§ 111 and 1016(a)(2). Section 111 provides, pertinently:
(a) DEDUCTIONS.—gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter.
The substance of the rule, prior to its codification, was stated in Dobson v. Commissioner, 46 B.T.A. 770, 1942 WL 259 (1942), rev’d sub nom. Harwich v. Commissioner, 133 F.2d 732 (8th Cir.), rev’d sub nom. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248 (1943):
Where there is recovery in respect of a loss sustained in an earlier year and a deduction of such loss claimed and allowed for the earlier year had effected an offset in taxable income, the amount recovered in the later year should be included in taxable income for the year of recovery, [because] the prior deduction of the amount of the loss out of taxable income and the subsequent recovery, being in the nature of a replacement of taxable income, is equivalent to gain to the taxpayer. [46 B.T.A. at 773-774]
*317 More recently, the United States Supreme Court held in Hillsboro National Bank v. Commissioner, 460 U.S. 370, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1988) that the purpose of the tax benefit rule “is to approximate the results produced by a tax system based on transactional rather than annual accounting.” 460 U.S. at 380, 103 S.Ct. at 1142. The Court went on to declare:
The basic purpose of the tax benefit rule is to achieve rough transactional parity in tax ... and to protect the Government and the taxpayer from the adverse effects of reporting a transaction on the basis of assumptions that an event in a subsequent year proves to have been erroneous. [Id. at 383, 103 S.Ct. at 1143]
The Court dealt with section 111 in the following manner:
Finally, Justice Steven’s dissent relies heavily on the codification in § 111 of the exclusionary aspect of the tax benefit rule, which requires the taxpayer to include in income only the amount of the deduction that gave rise to a tax benefit---That provision does, as the dissent observes, speak of a “recovery-’’[5] By its terms, it only applies to bad debts, taxes, and delinquency amounts. Yet this Court has held, Dobson v. Commissioner, 320 U.S. 489, 505-506, 88 L.Ed. 248, 64 S.Ct. 239 [248-249] (1943), and it has always been accepted since, that § 111 does not limit the application of the exclusionary aspect of the tax benefit rule. On the contrary, it lists a few applications and represents a general endorsement of the exclusionary aspect of the tax benefit rule to other situations within the inclusionary part of the rule. The failure to mention inconsistent events in § 111 no more suggests that they do not trigger the application of the tax benefit rule than the failure to mention the recovery of a capital loss suggests that it does not, see Dobson, supra. [Id. at 388, 103 S.Ct. at 1146]
It is apparent that the tax benefit rule was, and continues to be, a judicially developed doctrine quite apart from the enactment of section 111. However, neither section 111 nor any of the decided cases deals with the tax benefit rule in the context of depreciation deductions and the effect thereof on the calculation of basis when the property with respect to which those deductions were taken was sold. Congress has dealt with the tax benefit rule in this context in section 1016(a)(2) of the Internal Revenue Code. That section provides:
*318 (a) General Rule—proper adjustment in respect of the property shall in all cases be made—
(2) in respect of any period since February 28,1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount—
(A) allowed as deductions in computing taxable income under this subtitle or prior income tax laws, and
(B) resulting (by reason of the deductions so allowed) in a reduction for any taxable year of the taxpayer’s taxes under this subtitle ..., but not less than the amount allowable under this subtitle or prior income tax laws, (emphasis supplied.)
Treas.Reg. § 1.1016-3(b) provides, in pertinent part:
... the decrease [in basis] required by paragraph (a) of this section ... for [depreciation] deductions ... shall be whichever is the greater of the following amounts:
(1) the amount allowed as deductions in computing taxable income ... and resulting (by reason of the deductions so allowed) in a reduction for any taxable year of the taxpayer’s taxes under subtitle A of the Code ... or prior income, war-profits or excess profits tax laws; or
(2) the amount properly allowable as deductions in computing taxable income under Subtitle A of the Code or prior income tax laws (whether or not the amount properly allowable would have caused a reduction for any taxable year of the taxpayer’s taxes). (emphasis supplied.)
The amount allowable for tangible assets acquired after December 31,1980 is precisely and definitively determinable under Code Section 168, which introduced the Accelerated Cost Recovery System (ACRS). Section 168(a) provides that the depreciation deduction provided by § 167 for any tangible property must be determined by using the applicable depreciation method, the applicable recovery period and the applicable convention, as those terms are defined in § 168.
Holiday characterized the hotel as 15-year properly other than low-income housing and applied the applicable percentages as prescribed in Prop.Reg. § 1.168-2(b)(2). The furniture, fixtures and equipment in the hotel was assigned a 5-year life and depreciated in accordance with the schedule provided in Prop.Reg. § 1.168-2(b)(l).
Thus, if the Federal rules are followed, basis is unaffected by the absence of a tax benefit from depreciation deductions in 1981 *319 through 1986, as the deductions claimed were equivalent to the amount allowable as determined under § 168.
While, to be sure, the Internal Revenue Code and the New Jersey Gross Income Tax Act are fundamentally disparate statutes, the legislature has explicitly incorporated certain Federal income tax concepts. See Smith v. Director, Div. of Taxation, supra 108 N.J. at 32-33, 527 A.2d 843. For example, N.J.S.A. 54A:5-1(b) provides that net profits from business be determined “in accordance with the method of accounting allowed for Federal income tax purposes.” N.J.S.A 54A:5-1(c) provides that “[t]he [t]erm ‘net gains or net income’ shall not include gains or income from transactions to the extent to which nonrecognition is allowed for Federal income tax purposes.” Most significantly, N.J.S.A 54A:5-1(c) also provides that “[f]or the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for Federal income tax purposes.” In this case, the Federal income tax basis in Holiday’s hotel property would have been reduced by allowable depreciation even if such depreciation produced no Federal income tax benefit to Gemini or to Gemini’s partners.
The use of Federal income tax basis, as required by N.J.S.A 54A:5-l(c), reflects (1) the application of the ACRS rules, i.e., the mandatory use of allowable depreciation; and (2) the reduction of basis by allowable depreciation irrespective of any tax benefit associated with depreciation deductions. There is no warrant for an adjustment in that basis in plaintiffs’ favor on the ground that depreciation deductions in the years 1981 through 1986 were “wasted”, i.e., they produced no tax benefit. Plaintiffs, in effect, are asking for a benefit under the New Jersey gross income tax that would not be available under the Internal Revenue Code, even if the prior depreciation deductions taken by Holiday had produced no tax benefit. A cursory examination of Walsh v. Division of Taxation, 10 N.J.Tax 447 (Tax 1989), aff'd per curiam *320 240 N.J.Super. 42, 572 A.2d 222 (App.Div.1990) would seem to compel a result in plaintiffs’ favor. However, that case actually stands for the proposition that Federal basis will be adjusted for New Jersey gross income tax purposes where the legal basis for the Federal adjustment to basis does not exist under the New Jersey Gross Income Tax Act. In Walsh the Tax Court held that reductions in basis of subchapter S stock for Federal income tax purposes, arising from losses and other deductions passed through by the subchapter S corporations to their shareholders, would be ignored in determining basis under N.J.S.A 54A:5-1(c), as New Jersey law does not recognize subchapter S corporations.
The case before this court is distinguishable. Here, as defendant points out, the tax benefit associated with depreciation deductions in years prior to the sale was not unavailable as a matter of law; it was unavailable because Holiday sustained losses. Had Holiday operated at a profit in those years, plaintiffs would have derived a tax benefit from their distributive share of the depreciation deductions, i.e., their New Jersey gross income tax would have been less. Furthermore, even if Holiday, through Gemini, passed losses through to plaintiffs, those losses could have been offset against income from other partnerships; to the extent that depreciation allowances were included in plaintiffs’ distributive share of Holiday’s losses, plaintiffs would have derived a tax benefit from their distributive share of Holiday’s losses.
Moreover, the concern expressed by Judge Lasser in Walsh 10 N.J.Tax at 462-63 that use of federal adjusted basis in a situation where New Jersey does not recognize the transactions producing the adjustments results in a tax on capital is inapplicable to the case under review. In this case, unlike the situation in Walsh, the court is not concerned with the sale of a taxpayer’s interest in a business entity, i.e., corporation or partnership, but with the sale of property owned by that business entity (here, a partnership). *321 Thus, the issue of a tax on capital is not properly before this court.[6]
Finally, the adoption of a perduring rule which would increase federal basis whenever prior years’ depreciation allowances produced no tax benefit would not correct an alleged inequity. Rather, it would confer an unjustified advantage not available under Federal law. The limitation of a tax benefit for “wasted” depreciation allowances to the excess of the amount of depreciation “allowed” over the amount allowable as provided in Code Section 1016(a)(2) had no effect when losses in passive activities[7] could be applied against income from other sources. With the passage of the Tax Reform Act of 1986, however, which added § 469 to the Code, passive activity losses may only offset passive activity income. (Section 469 is the approximate equivalent of N.J.S.A. 54A-.5-2, which prohibits netting of intercategory income and losses.) Thus, under both Federal and New Jersey law, depreciation allowances reduce basis irrespective of any tax benefit. Plaintiffs would have this court apply a preferential rule to give them relief not available under Federal law. This the court simply declines to do.
The parties will submit computations pursuant to R. 8:9-3, following which judgment will be entered in accordance "with this opinion.

 No explanation appears in the record for the slight variation in the name of the foreclosing second mortgagee.

 The source of the forgiveness of debt income is not clear. Conceivably, the forgiveness of debt reported on Holiday’s 1987 return refers to the purchase money mortgages taken by the sellers at the time Holiday acquired the property in 1981. If so, the amount of those mortgages, which were discharged by the foreclosure judgment, is applied to reduce basis, thereby increasing the income realized by the foreclosure. Section 108(e)(5), Internal Revenue Code of 1954. Alternatively, if all of Holiday’s liabilities were cancelled in connection with the foreclosure sale, the entire amount of such liabilities was' includible in the amount realized and there was no discharge of indebtedness income. Rev.Rul. 91-31, CB 1991-1, 19; Allan v. Commissioner, 86 T.C. 655, 666-67, 1986 WL *313 22112 (1986), aff'd 856 F.2d 1169 (8th Cir.1988). While the Gross Income Tax Act does not include forgiveness of debt in the specified categories of income subject to tax, plaintiffs have treated the entire gain recognized on the foreclosure sale, including the amount characterized as cancellation of indebtedness income, as includible in their New Jersey Gross Income, to the extent of their distributive share.

 Gemini's distributive share of the gain realized on the foreclosure was $415,001. This should have been passed through separately to Gemini, according to § 702(a)(3), of the Internal Revenue Code (section 1231 gains and losses). See 1 Federal Taxation of Partnerships and Partners If 9.03, 10.06 (1977). The parties, however, agree that the gain on foreclosure was $414,891.

 The issue in this case is confined to treatment of Holiday’s basis in the hotel property for purposes of determining gain on the 1987 foreclosure sale, and whether such basis should be adjusted for prior depreciation allowances, even though those allowances did not produce a tax benefit in prior years. The court is not concerned with the basis of each plaintiffs partnership interest in Gemini/Holiday, which was reduced in years prior to 1987 by losses passed through from Holiday, through Gemini, to each plaintiff. Indeed, plaintiffs acknowledged the foregoing in their reply brief.

 Section 111(a) provided as follows during 1973, the year before the Court in Hillsboro: "Gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax or amount.” "Recovery exclusion” was defined as the amount of a prior year's deduction for a bad debt, tax or delinquency amount that produced no reduction in tax.

 In any event, the Federal tax returns in evidence in this case indicate that plaintiffs' cash investment of $95,000 for their partnership interests in Holiday was recovered through the Federal tax benefits which they realized from the pass-through of Holiday's losses in the years 1981 through 1986. Thus, there can be no tax on capital as that capital was fully recovered by the time of the foreclosure sale in 1987.

 "Passive activity” is defined in § 469 of the Code as a trade or business in which the taxpayer does not materially participate. That describes the status of plaintiffs with regard to the operation of the Holiday Hotel.